## DE CONICK *v.* DE CONICK.

1. WILLS—ESTATES CREATED—CONDITIONS—PRECEDENT OR SUBSE-
QUENT.

There are no technical appropriate words which always de-
termine whether a devise be on a condition precedent or sub-
sequent, the question being always one of intention.   If the ·
language used shows that the act on which the estate de-
pends must be performed before the estate can vest, the con-
dition is, of course, precedent, and, unless it be performed
the devisee can take nothing, but if the act does not neces-
sarily precede the vesting of the estate, but may accompany
or follow it, the condition is subsequent.

2. DEEDS—ESTATES CREATED—CONDITIONS—PRECEDENT OR SUBSE-
QUENT—CONSTRUCTION.

In construing a 'deed to determine whether the conditions
therein are precedent or subsequent, the court avails itself
of the light afforded by surrounding circumstances.

3. SAME—CONDITION SUBSEQUENT.

Where decedent executed a deed of certain lands to her son,
conveying to him on condition that he provide her niece with
a home and suitable support in his family, in default of
which the estate was to revert to the grantor and her heirs,
and left the conveyance with counsel who drew it to be de-
livered on her death, keeping it otherwise secret, the condi-
tion was subsequent and not precedent, and the grantee was
not obliged to furnish the support to the niece until after the
grantor's death.

4. SAME—CONSTRUCTION—PROPRIETY.

A condition in a deed by which the grantor intended to provide
a life support for a niece, whom she acknowledged herself to
be legally and morally bound to support, will not be construed
to create a condition precedent rather than subsequent, if
the latter construction is consistent with a lawful and rea-
sonable construction of the language used, and the former
would invalidate the instrument and defeat the purpose for
which the estate was created.

Appeal from Wayne; Donovan, J.   Submitted June
18, 1908.   ( Docket No. 54.)   Decided September 10,
1908.

Bill by John De Conick against Edward De Conick and others to set aside a deed. From a decree for complainant, defendants appeal. Reversed, and bill dismissed.

*M. F. Lillis* and *Geer, Williams, Martin & Butler*, for complainant.

*Perry & Lynch* (*John C. Donnelly*, of counsel), for defendants.

HOOKER, J. The complainant and defendant Edward De Conick are sons of Johanna De Conick, deceased. Jennie is the wife of Edward De Conick, while Mary Nagle is a niece of Johanna De Conick, who has lived in the families of Johanna and Edward nearly all of the time since she was 11 or 12 years of age. Johanna De Conick was the owner of two parcels of land, one an 80-acre parcel, a part of the homestead, the other a 20-acre parcel, in or near Detroit. Edward De Conick has always lived with his mother, and, since John left home at the age of 23, has worked the farm. On May 28, 1894, Johanna caused her counsel to draft two deeds, one to John of six acres of the 20-acre parcel, the other to Edward of the 80-acre parcel and the remainder of the 20-acre lot. She did not then execute these deeds, but took them away with her. The deeds were warranty deeds, and we state the material portions, which were the same in both:

"For and in consideration of the sum of one dollar, love and affection and the performance of the conditions hereinafter set forth to him in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, has granted, bargained, sold, remised, aliened and confirmed, and by these presents does grant, sell, remise, release, alien and confirm unto the said party of the second part, and to his heirs and assigns, forever. * * * Provided always and this conveyance and the estate in said premises hereby created is subject to the express conditions following, viz.: (1) That the said party of the second part, his heirs and assigns, shall at all times faithfully provide and supply Mary Nagle, niece of first party, and for whom first party is under legal and moral

obligations to provide, with a comfortable home and a suitable support and maintenance in and with the family of second party and his heirs. (2) That said second party shall within three years after the death of the said first party pay said Mary Nagle the sum of three hundred (300) dollars ($300.00). In case the grantee (second party), his heirs and assigns, shall fail, neglect, or refuse to well and faithfully fulfill and comply with and perform the said conditions as above set forth, then the entire title and estate in and to the said described premises hereby created shall cease, and the title to the said premises shall thereupon at once revert to and vest in the said party of the first part, her heirs and assigns forever, and it shall then be lawful for the said party of the first part, her heirs or assigns, to enter upon the said premises, and said party of the second part, his heirs and assigns, and every person claiming under him or them, wholly to remove, expel, and put out.   *   *   *   And the said party of the first part, for his heirs, executors, and administrators, does covenant, grant, bargain, and agree to and with the said party of the second part, his heirs, and assigns, that at the time of the ensealing and delivery of these presents she is well seised of the premises above described as of a good, sure, perfect, absolute, and indefeasible estate of inheritance in the law in fee simple; and that the said lands are free from all incumbrances whatever and that the above-bargained premises in the quiet and peaceable possession of the said party of the second part, his heirs and assigns against all and every person or persons lawfully claiming, or to claim, the whole or any part thereof, she will forever warrant and defend, on the performance by second party, his heirs and assigns, the conditions hereinbefore set forth."

She desired to execute and leave these deeds with her counsel, but he advised against it, telling her that, if she should do so, she would lose all control over them, and could not recall them. He also advised against the course taken, upon the ground that she might be unable to execute them when the emergency should arise that should make it necessary to carry out her intentions, which she said were to give John the six acres, Edward the remainder, and to secure to Mary Nagle a sum of money and her support during Edward's lifetime. She insisted,

however, and took them away with her. Counsel next saw the deeds on April 21, 1902, when she brought them in and expressed an intention of executing them. She did so, and stated to counsel that she wished him to keep them, and deliver them to John and Edward, respectively, after her death. On January 20, 1905, counsel was called to draw a will for her. In that will she disposed of some personal property that she had. She died soon after, and the deeds were delivered by counsel, in accordance with the directions theretofore given by her. The bill was filed by John as an heir to set aside the deed to Edward on the grounds that the grantor was at the time of its execution mentally incompetent, that its execution was procured by undue influence, and that there was no valid delivery of the deed during her lifetime. Upon a hearing on pleadings and proofs, a decree was made in favor of the complainant in accordance with the prayer of the bill, and defendants have appealed.

Counsel seem to agree that there is but one question in the case, viz.: Did the title to the property vest in the respective grantees at the time of the delivery of the deeds to Mr. Lynch, and that this depends upon the nature of the conditions, i. e., whether precedent or subsequent? Both recognize the rule that the latter is a question of the intention of the grantor. Everything indicates that Mrs. Johanna De Conick informed no one of what she had done. It first came to the knowledge of the grantees after her death. She and Edward, his wife, and Mary Nagle continued up to. the time of her death to live as one family. Counsel for complainant insists that, to comply with the conditions of this deed, required Edward to support Mary Nagle during the remainder of his mother's life, and to pay her $300 within three years after her death, that these constituted almost the entire consideration for the deed and were mentioned as part of the consideration, which, he says, creates the presumption that the condition is precedent; citing *Markham* v. *Hufford*, 123 Mich. 508 (48 L. R. A. 580). It is not necessary to go further than the

next sentence after the language relied on of the case cited
to show that such is not a necessary conclusion, where the
opinion of Chief Justice Marshall in *Finley* v. *King's
Lessee*, 3 Pet. (U. S.) 346, is quoted approvingly as fol-
lows:

" ' It is certainly well settled that there are no technical
appropriate words which always determine whether a de-
vise be on a condition precedent or subsequent. The same
words have been determined differently, and the question
is always a question of intention. If the language of the
particular clause or of the whole will shows that the act
on which the estate depends must be performed before the
estate can vest, the condition is, of course, precedent, and,
unless it be performed the devisee can take nothing. If,
on the contrary, the act does not necessarily precede the
vesting of the estate, but may accompany or follow it—if
this is to be collected from the whole will—the condition
is subsequent.' "

We have often recognized the doctrine, and understand
that it is not questioned, as a general rule, but that coun-
sel claim that the circumstances of this case should be
held to show an intent to create a condition precedent.
We may properly avail ourselves of the light afforded by
surrounding circumstances in interpreting the words used.
*Leonard* v. *Leonard*, 145 Mich. 566. If we do this, we
think it impossible to treat these as conditions precedent.
We must conclude from her secrecy that Johanna did not
intend that her sons should know what she had done dur-
ing her life. As in all other such cases, she apparently
intended that no change should occur in the possession
until her death. Manifestly she could not have intended
that Edward would perform a condition during her life
that she intended to keep from him. Moreover, it would
be unreasonable to conclude that Edward's obligation to
care for Mary Nagle after the death of Johanna and at all
times, even up to her death, was intended to be a condi-
tion precedent. We think the more reasonable conclusion
is that she expected family relations to continue as they
were at the time, and, as they did continue, that the con-

ditions should not be considered as precedent, but that title¹ should pass subject to forfeiture, in which case it should "revert and revest" as expressly provided in the deed. Any other construction will invalidate the instrument and deprive Mary Nagle of any benefit of her aunt's intended bounty, a thing to be avoided if it can be found consistent with a lawful and reasonable construction of her language.

In this connection we call attention to the language used in *Taft* v. *Taft*, 59 Mich. 193:

"It was said in *Foster* v. *Mansfield*, 3 Metc. (Mass.) 412, that where a deed is deposited with a third person, and 'the future delivery is to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed until the second delivery; but, when thus delivered, it will take effect by relation, from the first delivery.'"

This delivery by Lynch was subject to no condition. It was to be made on the happening of the inevitable event of Johanna's death. Is not this an additional circumstance showing that support of Mary Nagle before Johanna's death was not part of the condition, and that her support afterwards was not intended to be a condition precedent?

The decree is reversed, and the bill dismissed, with costs of both courts.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.