EMMA BERNHARDT and GEORGE BERNHARDT, her husband, Appellants, v. LEWIS PERRY.

In Banc, January 25, 1919.[1]

1. **PARTIES: Misjoinder: Husband in Wife's Suit.** The statutes ex-pressly allow the wife to sue with or without joining her hus band. Consequently in a suit by a wife for damages resulting from personal injuries to her husband, to join him as a plaintiff is not a misjoinder.

Bernhardt v. Perry.

2. LIMITATICNS: Wife's Suit for Damages. A wife's action for damages for personal injuries to her still-surviving husband is not barred in five years, for being a married woman the five-year Statute of Limitations does ...t run against her.

3. CAUSE OF ACTION: Physical Injury to Husband: Wife's Right to Recover Under Section 8309. Section 8309, Revised Statutes 1909, giving to a wife the right to sue a third person for the alienation of her husband's affections, does not give her the right to sue for damages for personal injuries to her living husband. Neither under that section nor under Sections 5425 or 5426 can she maintain a suit for the loss of her husband's society or consortium, nor while he lives can she maintain a suit for loss of support or maintenance at his hands, which results to her because of negligent injuries to him. In an alienation suit her right to recover for the loss of his society, support and maintenance is based on torts committed against her, and not against him; in a suit for damages for personal injuries to her living husband she sues for torts against him, and not for torts against her; after his death she may recover for loss of support and maintenance due to torts committed against him, but only because the action is transmitted to her by statute.

*Held.* by POND, C. J., dissenting, with whom WILLIAMS, J., concurs, that the wife can maintain an action for the loss of the society, support and maintenance of a living husband, lost to her by personal injuries negligently inflicted by a third party. The action for the loss of these things is grounded in the wife·upon the elemental principles of the common law which recognized her personal right to enjoy the consortium of and to be supported and maintained by her husband, coupled with the provisions of Section 8309 designed to establish the right of the wife to sue for and recover for "any violation of her personal rights."

4. ———: ———: ———: Double Damages. If Section 8309 gave to the wife a cause of action for the damages she sustained as a result of personal injuries to her husband, she could recover double compensation for the same injury and from the same third party; she could recover for the loss of her husband's support and all other injuries, indirectly by his suit, and directly by her own.

*Held*, by BOND, C. J., dissenting, with whom WILLIAMS, J., concurs, that the proceeds of a suit for the violation of the wife's personal rights are her separate estate, and do not belong to her husband and could not be recovered in any suit by him alone.

5. ———: ———: ———: Purpose of Statute. Section 8309 does not undertake to create any new rights in or give any new case of action to the wife; it was meant to enable her to enjoy her own property free from the control or interference of her husband.

Bernhardt v. Perry.

*Held,* by BOND, C. J., dissenting, with whom WILLIAMS, J., concurs, that the right of the wife to the society, support and protection of her living husband was established by the common law as a personal right, and has been universally admitted, and the statute gave her a further right to sue for and recover damages for a violation of that or any other of her personal rights.

6. ———: ———: **Married Woman's Acts.** The Married Woman's Act of this State completely severed the wife from her husband so far as regards her personal and property rights, but created no new property right in her. Under them the wife is entitled to the support and society of her husband, and can sue him in an ordinary action for failure to support her, and in a divorce suit for a violation of his marital duties, including a loss of his society, and she can in an alienation suit against a third person recover for the loss of the support and society of her husband. But though physical injuries to h'm may result in loss to her of his support and society, those statutes do not create in her a right to recover for the loss of them during his life, and after his death she can recover only because his cause of action is by the Damage Act transmitted to her.

*Held,* by BOND, C. J., dissenting, with whom WILLIAMS, J., concurs, that the Married Woman's Acts provide in express terms for the enforcement by the wife of a cause of action growing out of a violation of her personal rights, that among those rights, established by the common law, was her right to the society, love, protection and maintenance of her husband, and for a loss of those things caused by the torts of a third person against her living husband she can ma'ntain an action for damages. While she could not recover at common law, for then her legal existence was merged in her husband, that law recognized her personal right to the consortium, support and maintenance by him, and the Married Woman's Acts gave her the right to sue for the redress of a violation of those personal rights, just as if she were a *femme sole*.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*H. C. Whitehill* for appellants.

(1) A married woman, by statute, may sue in law or in equity, with or without joining her husband as a party. R. S. 1909, sec. 8304. (2) The Statute of

limitations does not operate against a married woman during coverture. R. S. 1909, sec. 1894; Lindell Co. v. Lindell, 142 Mo. 61; Linck v. Vorhauer, 104 Mo. App. 368; Hall v. Frank, 165 Mo. 430; Graham v. Ketchum, 192 Mo. 15.  (3') The Constitution requires that the courts of the State shall be open to every person, and certain remedy offered for every injury to person, property, or character; and that, without denial or delay. Const. Mo., art. 2, sec. 10. (4) The Constitution of Missouri and the Constitution of the United States both prohibit the taking of property without due process of law, while the United States Constitution provides that no State "shall deny to any person within its jurisdiction the equal protection of the laws." Const. Mo. art. 2, sec. 30; U. S. Const., Amend. 14, sec. 1; 8 Cyc. 1058, 1095; Holden v. Hardy, 169 U. S. 366; Blake v. McClung, 172 U. S. 239.  (5) A married woman may sue a third person for alienating the affections of her husband, on the theory that her right to his companionship and society has been violated. Clow v. Chapman, 125 Mo. 101; Nichols v. Nichols, 147 Mo. 386; Claxton v. Pool, 182 Mo. App. 13; Cornelius v. Cornelius, 233 Mo. 1; Nolin v. Pearson, 191 Mass. 283, 4 L. R. A. (N. S.) 643; Sims v. Sims, 29 L. R. A. (N. S.) 842.  (6) A wife may sue a third person for a tortious act resulting in the insanity of her husband.  Clark v. Hill, 69 Mo. App. 544.  She may sue a third person for the loss of the society—the consortium—of her husband, where the husband was incapacitated by the sale of morphine.  Flandermeyer v. Cooper, 85 Ohio St. 327, 40 L. R. A. (N. S.) 360.  (8) She sue upon the bond of a liquor dealer for the loss of her husband's society, through the sale of liquor to her husband.  Schlosser v. State, 55 Ind. 82.  (9) The wife is entitled to the support, society, protection, aid, comfort and companionship of her husband and for the wrongful deprivation thereof by any person, and by whatever means, she has a right of action against such person for so depriving her of these material benefits of the marital relation.  Nichols v. Nichols,

147 Mo. 401; Flandermeyer v. Cooper, 85 Oh. St. 327, 40 L. R. A. (N. S.) 363; Sims v. Sims, 76 Atl. (N. J.) .063, 29 L. R. A. (N. S.) 842. (10) The Married Women's Acts of Missouri, at the time this injury to the husband was inflicted, provided, among other things, that all personal property including "rights of action which have come to her during coverture . . . or has grown out of any violation of her personal rights," shall be her separate property. R. S. 1899, sec. 4340. (11) The right of a wife to the society—consortium—of her husband is one of her personal rights, and the benefit she has therein is equal to that which the husband has in the consortium of his wife, nor is his right thereto greater than hers. Clow v. Chapman, 125 Mo. 104; Nichols v. Nichols, 147 Mo. 401; Claxton v. Pool, 182 Mo. App. 13; Cornelius v. Cornelius, 233 Mo. 1; 1 Cooley on Torts (3 Ed.), p. 477; Westlake v. Westlake, 34 Oh. St. 621; Flandermeyer v. Cooper, 85 Ohio St. 327, 40 L. R. A. (N. S.) 360; Sims v. Sims, 29 L. R. A. (N. S.) 842; Weber v. Weber, 169 S. W. (Ark.) 318, L. R. A. 1915A, 67; Nolin v. Pearson,.191 Mass. 283. (12) A well-known legal principle scarcely needing citation, is that a husband is entitled to the aid, society and assistance—the consortium—of his wife. For any violation thereof, by a third person, he has a cause of action. Cullar v. Railway, 84 Mo. App. 349; Nelson v. Railway, 113 Mo. App. 659; Kirkpatrick v. Railway, 129 Mo. App. 524; Womach v. St. Joseph, 201 Mo. 467. (13) If a husband at common law can sue for the loss or injury to the society—the consortium—of his wife, there can be no real or substantial reason why, under our statutes, a wife cannot sue for a corresponding loss or injury to her right to the consortium of her husband, each party to the marriage having a personal as well as a legal right to the conjugal society of the other. Such right in a wife existed at common law but could not be enforced under that system for lack of appropriate proceedings or writs, because of the unity of husband and wife which predominated, . forcing the recognition of such right into the ecclesiastical courts.

Orme v. Orme, 2 Adams Eccl. Rep. 382; R. R. v. Jackson (1891), 1 Q. B. 85; Lynch v. Knight, 9 H. L. Cas. 577, 11 Irish Jurist, 284 (3 Bl. Com. 87 and 94); Clow v. Chapman, 125 Mo. 101; Nichols v. Nichols, 147 Mo. 386; Cornelius v. Cornelius, 233 Mo. 386; Flandermeyer v. Cooper, 85 Ohio St. 327.   (14) Whatever may be the trend of the decisions of other States as to the contentions of appellant, it is certain that this Court must construe this statute of Missouri for itself, and that the only fair and reasonable and logical construction to be placed upon it is that a married woman, now having the equal right to the society, care, aid, protection, etc., in short, the consortium, of her husband for any deprivation thereof should be afforded a certain and proper remedy. Nichols v. Nichols, 147 Mo. 410; Const. Mo. art. 2, sec. 30; U. S. Const., Amend. 14, sec. 1; Blake v. McClung, 172 U. S. 239.

*Jones, Hocker, Sullivan & Angert, C. P. Ellerbe,* and *J. C. Jones, Jr.,* for respondent.

(1) Where the husband is injured through the negligence of another, the wife cannot recover for the loss of the consortium of her husband. Stout v. Railway Co., 172 Mo. App. 113; Gambino v. Coal & Coke Co., 175 Mo. App. 653; Feneff v. New York Ry. Co., 203 Mass. 278, 24 L. R. A. (U. S.) 1024; Goldman v. Cohen, 63 N. Y. Supp. 459; Brown v. Kistleman, 177 Ind. 692; Marri v. Railroad, 84 Conn. 9, 33 L. R. A. (N. S.) 1042; Kelley v. New York Ry. Co., 168 Mass. 308; Nolin v. Pearson, 191 Mass. 283, 286.   (2) Even if the wife has a cause of action for damages for the loss of the consortium of her husband by reason of injury sustained by him on account of the defendant's negligence, her husband has no interest in said action and he is improperly joined as a party plaintiff. Sec. 1735, R. S. 1909; Sec. 8304, R. S. 1909; Smith v. City of St. Joseph, 55 Mo. 456; Elliott v. Kansas City, 210 Mo. 516; Womach v. City of St. Joseph, 201 Mo. 467. (3) There is a vast and fundamental difference between an action by the wife for the alienation of her

husband's affections and the action here sought to be maintained. Malice, actual or implied, on the part of the defendant is essential before an action for the alienation of affections will lie; and malice, actual or implied, having been shown, damages are allowed even though no actual damages are proved. Actions for the alienation of affections are adjuncts of the criminal law (see Smith v. Nicholas Bldg. Co., 112 N. E. 205, and Goldman v. Cohen, 63 N. Y. Supp. 459). They are punitive actions engrafted on the law of civil rights in aid of the criminal law and as such are exceptions to the law concerning civil rights, and the damages recoverable by the injured party in such actions are more in the nature of a punishment or penalty inflicted upon the wrongdoer than as compensation for the loss actually sustained by the plaintiff. Geromini v. Brunelle, 214 Mass. 465; Rinehart v. Bills, 82 Mo. 534; Cornelius v. Cornelius, 233 Mo. 29. (4) Where, however, "the gravamen of the action is the negligence of the defendant," damages are recoverable by the injured party for the injury or loss actually sustained and not as a penalty or punishment upon the defendant. There is no allegation in the petition in this case that the defendant was actuated by malice, actual or implied, or that the injuries were intentionally inflicted upon the plaintiff's husband for the purpose of depriving plaintiff of her husband's affections, and the plaintiff has not brought herself either within the reason or the basis of the rule or principle of law which allows her to recover for the loss of her husband's consortium in an action for the alienation of her husband's affections. Goldman v. Cohen, 63 N. Y. Supp. 459; Smith v. Nicholas Building Co., 112 N. E. 205. (5) There is no "violation" of the right of the wife to the consortium of her husband where, as here, the basis or gravamen of the action is the negligence of another. At common law, the husband was entitled to the services of his wife, and he alone could maintain an action for the loss thereof against one as the result of whose negligence or otherwise he was deprived

of her services. The right to recover for the injuries actually sustained by the wife, however, was recognized as belonging to the wife herself, but as she could not maintain an action in her own name at common law, her husband was required to join with her in actions against a defendant for the recovery for such injuries. In other words, the wife was entitled to recover in her husband's name at common law for violations of her person or her personal rights. For a violation of the husband's personal rights, he alone could maintain an action, and the wife was neither a necessary nor a proper party thereto. So, as to the husband's services, the right to sue for the loss thereof was in him and not in her. (6) The wife never had any right to the services of her husband at common law, and she is endowed with no such right under the statutes of this State. As the common law gave the wife no right to the husband's services and no right to sue for injuries which occasioned the loss of his services, the Married Woman's Act, which merely empowers the wife to sue for "violations of her personal rights," should not be so construed as to enable her to sue for that which was never hers. (7) It is to be noted, furthermore, that the petition does not seek to recover for the loss of her husband's services. It must, therefore, necessarily follow that the loss of the husband's society and companionship, exclusive of services, is all that can properly be included in the term "consortium" and all that is sought to be recovered in the right of the husband. (8) Where the gravamen of the action is negligence the law does not recognize as being capable of pecuniary ascertainment the loss of the consortium (independent of services) of either the husband or the wife. Marri v. Railroad, 84 Conn. 9; Smith v. Nicholas Building Co., 112 N. E. 204; Truepp v. N. Y. Cent. Ry. Co., 203 Mass. 278; Stout v. Railway Co., 172 Mo. App. 113, 119; Parsons v. Railroad, 94 Mo. 286; McGowan v. St. Louis Ore & Steel Co., 109 Mo. 526; Schaub v. Railroad, 106 Mo. 93; Howard v. Scarritt Estate, 161 Mo. App. 562.

WOODSON, J.—The plaintiffs brought this suit in the Circuit Court of the City of St. Louis against the defendant, to recover $15,000 damages done the female plaintiff for personal injuries alleged to have been negligently inflicted upon the plaintiff, George Bernhardt, her husband.

The defendant filed a demurrer to the petition, which was by the circuit court sustained; and the plaintiffs declining to plead further, judgment was entered for the defendant, and in due time and in proper form the plaintiffs appealed the cause to this court.

The petition was as follows:

"Plaintiffs state that at all times hereinafter mentioned and at the time of the filing of this petition, they were inhabitants and residents of the City of St. Louis and State of Missouri, and at all such times were lawfully married and living together as husband and wife. That at all the times hereinafter mentioned the defendant was the owner and holder of the record title of and to certain real estate being, lying and situate in said city and State and being improved with a —— story apartment building thereon, said property being described as follows:

"Lot 18 and the western 22 feet of lot seventeen of Fullerton's Subdivision, in City Block 4576, fronting together 65 feet upon the Westminster Place by a depth of 144 feet and 11 3/8 inches to an alley.

"For cause of action plaintiffs state that on or about the 1st day of February, 1907, defendant herein employed and hired the said George Bernhardt as janitor, fireman and engineer at and for said apartment building aforesaid, and that among other things it was his duty to clean the firebox, boiler and other portions of the heating apparatus of said apartment building and to care for and tend same. That shortly after being employed or hired, as aforesaid, to-wit, within about two weeks thereafter, it became necessary for the said Bernhardt, in the discharge of his duties in and about said building, to clean the boiler and heating

apparatus of said building, and that in order to prompt-
ly perform said duty with the appliances at hand
which had been furnished to him by the said defendant,
it became necessary for him to attach a hose pipe or
other similar appliance to said boiler or heating ap-
paratus, and upon turning the hot water or the steam
from the same into said hose, pipe or similar appli-
ance for the purpose of carrying the same off from said
boiler or heating apparatus, the said hose, pipe or other
similar appliance, by reason of its broken, defective,
worn-out, rotten, decayed and insecure and unfit con-
dition, broke or bursted or exploded at or near its
jointure with said heating apparatus or said boiler,
causing the steam or boiling water of said boiler or
heating apparatus to be thrown and hurled in all
directions, and on and upon the said Bernhardt, and to
cause the said Bernhardt to become temporarily blinded,
which said explosion and bursting of said hose, pipe
or other similar appliance inflicted upon said Bernhardt
injuries hereinafter more particularly described as
follows:

"The said Bernhardt's lower limbs, abdomen, and
other parts of his body came into contact with and re-
mained for several minutes in the scalding, boiling
water, by reason whereof he was confined to his bed
continually for a period of one year or more, during
all of which time and for many a week, he was com-
pelled to be wrapped and kept in cotton and other
bandages; that for a long period of time he suffered
indescribable and excruciating pain; that portions of
the flesh on his lower limbs and other parts of his body
became seared and peeled off and broke out into open
and running sores, giving and causing him additional
pain and suffering; that said George Bernhardt suf-
fered great loss of sleep for days and weeks at a time,
so that, owing to the great and constant pain he was in,
it became necessary for weeks after receiving his in-
juries as aforesaid, to administer to him morphine
and other opiates in order to induce sleep, rest and

quiet; that for a long time immediately following said injuries said George Bernhardt suffered great mental agony lest he would not survive said injuries, and was in constant fear and apprehension lest blood-poisoning would set in in the injured and scalded parts of his body as aforesaid. That upon being able to leave his bed after a period of about one year, as aforesaid, said George Bernhardt was able to move about his room and his house for several weeks only by means of crutches, or in an arm chair, which crutches and chair he was compelled to use for a long period of time; that upon being able to discard said crutches, he was able to get around the house or to walk with the use and assistance of a cane, and then only for short periods of time; that ever since receiving said injuries and up to the time of the filing of this petition said George Bernhardt has been unable to bend or raise his right lower limb or to have any use thereof without great pain, and has been unable to walk up or down stairs or even for a short distance, without great pain and suffering; that the nerves in his said lower limbs have become hardened, thereby causing him additional pain and greatly impeding his movements; that it was necessary for him to be treated at various hospitals in the City of St. Louis for a long period of time immediately following the time hereinafter mentioned; that up to the time of this petition his left lower limb is still an open and running sore, causing him great pain and anguish; that he will for a long time suffer great pain and agony and will never be able to follow his usual occupation of working as a janitor, fireman or engineer in and around apartment buildings, and will for all time to come be permanently disabled from engaging in any and all kinds of work or occupation whatsoever.

"That by reason of said injuries the vital organs of his body have become affected, and their usefulness greatly impaired and his normal expectancy in life greatly diminished.

"That the injuries inflicted upon the said Bernhardt as aforesaid were caused and brought about by the negligence of the defendant in this, to-wit:

"First. That the defendant, wholly disregarding his duty to furnish to said Bernhardt a reasonably safe and secure and proper appliance with which to work in and about his duties as aforesaid, did furnish to said Bernhardt a hose, pipe or other similar appliance which at the time aforesaid was in a decayed, rotten, defective, insecure, worn-out and unfit condition for which said Bernhardt was to use the same, in and about the discharge of his duties as aforesaid, the defendant at the time knowing, or by the exercise of ordinary care on his part should have known, of such defective or otherwise unfit condition of said appliance for the purpose for which it was to be used.

"Second. That the defendant, wholly disregarding his duties to said Bernhardt, failed to warn said Bernhardt of the danger he was in in using in and about the discharge of his duties, as aforesaid, said hose, pipe or similar appliance which at the time was in a decayed, defective, rotten, insecure, worn-out or otherwise unfit condition, and which condition of said appliance was known, or by the exercise of ordinary care on his part, should have been known to the defendant in ample time to have warned said Bernhardt of said danger in the use thereof.

"Third. That the defendant, wholly disregarding his duty to the said Bernhardt to furnish him with a reasonably safe, secure and properly lighted place in which to work while in and about the discharge of his duties as aforesaid, did require said Bernhardt to discharge his said duties in a place which was narrow and ill lighted and which place had been allowed by the defendant to become filled with ashes and coal so as to obstruct the ordinary and proper ingress and egress from immediately in front of and around the said boiler or heating apparatus, and which said ill-lighted and obstructed condition of said place wherein said

Bernhardt was working was well known to defendant, or by the exercise of ordinary care on his part would have become known to him.

"That by reason of such ill lighted and improper condition of said room or place wherein the said Bernhardt was at the time aforesaid, it was impossible for him to escape from the same in order to have lessened the danger he was in or in order to extricate himself therefrom.

"That by reason of said injuries inflicted upon said Bernhardt as aforesaid, and as a direct result thereof, plaintiff, Emma Bernhardt, has been damaged in the following particulars, to-wit:

"She has lost a great amount of sleep in worry and anxiety on account of the physical condition of her said husband and in watching over him and caring for him; she has been caused great worry and anxiety by reason of the fact that her husband is incapacitated so that he will never be able to engage in his usual occupation; that she has suffered on account of the inability of her said husband to have and enjoy the ordinary and customary use of his feet and limbs and other vital parts and organs of his body, and that she will suffer in the future in this respect; that by reason of the physical and mental condition of her said husband she has suffered in mind and body and her health and strength have been impaired and her nervous system greatly shocked and undermined; that she has been denied care, protection, consideration, companionship, aid and society of her said husband which he would have rendered to her had such injuries not occurred, and that in the future she will be denied the same; that she has been denied the pleasure and assistance of her said husband in escorting her to places of amusement and in visiting friends and relatives, and will for all time to come be compelled to forego the same; that she has been required to remain at home for long periods of time and to deny herself to friends and relatives and will for all time to come be much

confined to her home and be required to deny herself to her friends and relatives; that for many weeks following the time of said injuries, she had had to forego and give up her ——— and the customary work of a housekeeper and to lose and forego the earnings which she derived from such occupations; that by reason of the delicate physical and mental condition of her husband she will for all time to come be unable to engage in such work or to have and enjoy the earnings therefrom.

"Wherefore, plaintiff prays judgment in the sum of fifteen thousand dollars, together with costs of this action."

I. There was no misjoinder of parties plaintiffs,
**Misjoinder.** for the statutes of this State expressly allow the wife to sue with or without joining her husband. [Secs. 1735 and 8304, R. S. 1909.]

II. The plaintiff's cause of action, if she had one,
**Limitations.** was not barred by the Statute of Limitations. She was a married woman and hence the five-year Statute of Limitations did not run against her. [Sec. 1894, R. S. 1909; Bobb v. Taylor, 184 S. W. 1028; Lindell Real Estate Co. v. Lindell, 142 Mo. 61.]

III. Counsel for the plaintiffs concede that at common law the wife could not sue for injuries sustained
**Cause of Action.** by the husband, whether they resulted in his death, or partially or totally incapacitated him from the performance of his marital duties toward her; but contend that in case of his death the Damage Act transfers his cause of action first to the widow, and second to his minor children. [Secs. 2864 and 2865, R. S. 1899, amended, and now Secs. 5425 and 5426, R. S. 1909.]

It is also practically conceded, as I understand counsel, that neither of these statutes creates the cause of action in favor of Mrs. Bernhardt she here

276 Mo.—40

sues on. But the contention of counsel is that Section 4340, Revised Statutes 1899, which was in force at the time of the injury, now Section 8309, Revised Statutes 1909, creates the cause of action, or perhaps more accurately speaking, gave the wife the right to sue for the wrongs stated in the petition which it is contended at all times belonged to her under the common law, but that said law provided her no remedy.

To say the least, this statute does not in express terms give the wife the cause of action sued on, nor does it authorize her to sue for damages for personal injuries sustained by the husband whether they result in his death or not; if in death, clearly she could not sue under this statute, but would have to sue, as the case might be, either under Section 5425 or 5426 Revised Statutes 1909, of the Damage Act; this has been so held many times by this court.

But counsel for the plaintiffs contend that since said Section 4340 gave the wife the right to sue a third person for the alienation of her husband's affections, then for the same reason it should be held that it gives her the right to sue for the injuries sued for in this case—citing Clow v. Chapman, 125 Mo. 101.

It is true that this court in that case held that the wife could sue and recover from a third person damages for the alienation of her husband's affections; but it seems to me that counsel misconceives the fundamental difference between the rights of a wife growing out of a personal injury to her husband and those growing out of the alienation of his affections.

We will consider those questions in the order stated.

In the former case the injury is physical, or grows out of a physical injury done to the husband, and he, if death does not ensue, is entitled to a recovery of damages resulting therefrom, which, in legal contemplation, is supposed not only to make him whole, but enables him to support his wife and children and to discharge all of his marital and parental duties due them in the same degree that the law imposed those duties upon him

previous to the injury, leaving no right of theirs, if any, violated, which has not been fully compensated; such was the common law. And, in the second place, where the injury mentioned resulted in the death of the husband, he, of course, being unable to sue for and recover the damages sustained, the Legislature, recognizing the duties the husband owed the wife, and the father to the children, enacted the statute reviving or transmitting, to the wife in the first instance and the children in the second, the cause of action the husband would have had against the tortfeasor, had he lived, to the extent of their rights to his support and maintenance; but all of the rights of the husband, wife and children were and are, by the common law and under the statutes, limited to said pecuniary losses, and did not extend to or include the loss of society and "consortium."

All of the authorities so hold, as I understand them, and no contention to the contrary is here advanced.

The foregoing refers to injuries done to a person, and briefly outlines the persons who under the common law and statutes may recover the damages flowing therefrom, as well as the character and extent of such damages. The wife has no other rights under the laws of this State.

This brings us to the consideration of the rights of a wife growing out of the alienation of the affections of her husband. In this action the husband is not injured physically or otherwise, within the meaning of the law, however far he may have strayed from the moral path of rectitude. His conduct in such a case is the result of his own assent, and of course he would have no standing in a court of justice to recover damages, if any, inflicted thereby. But not so as to the wife.

Under the Married Woman's Act, of 1889, the wife was completely severed from her husband regarding her personal and property rights, as though she was a *femme sole,* nothing more nor nothing less. [Clow v. Chapman, 125 Mo. 101.]

It is elementary that the wife is entitled to the protection, support and society of her husband; those rights are the corollaries of the marital duties the husband owes his wife, and she, under the act mentioned, could sue him in an ordinary action of law or equity for the violation of the two former, and in a suit for a divorce for the violation of the latter; and by parity of reasoning she can also, under that act, in a suit for alienation, sue a third person for wrongfully depriving her of any or all of those rights. [Clow v. Chapman, supra.]

But in an action of this character, the fact must not be lost sight of that the *wrong* she *complains* of is committed *against the wife* and *not against the husband,* as is the case in an action for personal injuries sustained by the husband; for that reason, and for the further reason that in this character of actions the alienation deprives her of all of her said rights, she may sue in the first instance either her husband, as before stated, or she may sue any third person who may deprive her of those rights.

It is, however, a *non sequitur* to say because the wife may maintain an action for damages against a third person for the alienation of her husband's affections, resulting in the loss of his protection, support and society, she may for like reasons maintain the suit at bar, where the injury is done to him and not her, and where he can recover full compensation therefor, which enables him to perform all of his duties to her, save perhaps his social duties; and I seriously doubt if the law imposes any purely social duties upon him the breach of which would sound in damages against him, save constituting sufficient grounds for divorce and alimony. But be that as it may, it is perfectly clear that neither at common law nor under the statutes whereby the cause of action is transmitted to her, can she, in a case of this character, even where the husband is killed, recover from the wrongdoer damages for the loss of her husband's society. All of the decisions so hold.

And if it were not for the Damage Act of this State transmitting to her the cause of action upon the death of her husband, she could not, at this day, recover from the wrongdoer, compensation for the pecuniary losses she sustained, much less for the loss of the society of her husband. [Elliott v. Railway, 67 Mo. 272.]

IV. There is another view to take of the contention of counsel for the plaintiffs and that is this:

If Section 4340, Revised Statutes 1899, gave Mrs. Bernhardt a cause of action for the damages she sustained as a result of injuries to her husband, then she could receive double compensation for the same damages and from the same person. In the first place, her husband would recover full compensation for all injuries he sustained, which includes the physical injury done to his person and the pain and mental anguish suffered, the loss of earning capacity, doctor bills, etc., and in addition he would recover for all injuries to his "vital organs" and for being incapacited to care for, associate with and protect her, as well as being deprived of his right to consort with her. This would make him whole, as much so as it would be possible to do, within the contemplation of the law; with those damages collected he would be just as able to perform all of his marital duties and obligations to her as if he had never been injured; and the law presumes he would discharge those obligations to the best of his ability, which would fully compensate her for all damages she had received; but if he should not do so, then she would have her legal remedy against her husband and not against the person who injured him. But notwithstanding this full compensation he is supposed to have recovered and which he must expend upon her for her proper care, support, maintenance, etc., yet, if she is authorized by said Section 4340 to recover from the defendant in this action, then she would recover from the same wrongdoer the damages she had sustained for

Double Damages.

the same injuries her husband had recovered for, and out of which, as before stated, he is legally bound to support, maintain and care for her. This would be double compensation, which in my opinion the Legislature never intended.

Again, if this Section 4340 gives the wife the right to recover the damages sued for in this case, then where the husband is killed why may she not sue under this section for the damages here claimed, and also under Section 5425 or 5426, Revised Statutes 1909, of the Damage Act, for the penalty and damages there provided for? I submit that there is no valid reason why she might not recover under both statutes, especially in so far as the penalty mentioned in Section 5425 is concerned; neither section contemplates that the compensation recovered under the one should be set off against that collected under the other. I see no good reason for saying the one might be set off against the other, if both are given to her by different statutes. But clearly this was not the design of the Legislature, as expressed in the Damage Act or in the Married Woman's Act. But independent of the foregoing observations, let us briefly examine this Section 4340, and see from the language thereof if it is possible even in the light of the Clow-Chapman case to place the construction thereon contended for by counsel for the plaintiff.

A careful study of this section will show that it does not undertake to create any new rights or give any new cause of action to the wife, but simply provides that all of her property, real and personal, including rights in action belonging to her before marriage, or which come to her during coverture, by gift, bequest or inheritance or by purchase with her separate means, or be due as the wages of her separate labor, or has grown out of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separate property and under her separate control and shall not be liable to be taken by any process of law for the debts of the husband.

In construing this statute, we must bear in mind that at common law the wife might own and possess real and personal property; in divers ways, she might acquire and become the owner of the various choses of action mentioned in this statute; and the husband had a right of action to recover damages growing out of the violation of her personal rights, all of which, except the real estate at common law, upon being reduced to possession, became the property of the husband, but none of which belonged to him absolutely until reduced to possession by him; until then all belonged to her.    The object of this statute was to prevent the husband from reducing her property to his possession and to prevent him from suing for and recovering the damages she suffered for the violation of her personal rights, thereby preventing him from becoming the owner thereof, by providing that they shall "be and remain her separate property and under her sole control," just as they were at common law before he reduced them to possession.    In other words, the intention of the Legislature was to prevent the husband from reducing his wife's property and choses in action to possession and thereby becoming the owner thereof and to enable her to retain the possession and ownership thereof separate and apart from him. This is not only the spirit and meaning of this statute, but almost the letter thereof as well.    But as regards the kind of action she must bring in order to protect her personal rights and property therein mentioned or to redress any wrong that might be done thereto resort must be had to the Practice Act, as this statute is wholly silent on the subject.

In my opinion no such idea was contemplated by the Legislature, nor did it intend to give the wife double compensation as before suggested.    There is no statute or common-law rule in this State which lends countenance to any such idea, but the purpose was to let her retain that which belonged to her.

Finding no error in the record, the judgment of the circuit court is affirmed.    *Walker, Faris* and *Graves,*

*JJ.,* concur; *Blair, J.,* concurs in result; *Bond, C. J.,* dissents in separate opinion, in which *Williams, J.,* concurs.

BOND, C. J. (dissenting).—I am constrained to dissent from the majority opinion in this case. The action is for a negligent injury to the husband of plaintiff, which it is alleged will deprive her in the future of the maintenance, conjugal care, society, aid and protection belonging to her as a wife, since the wrongful injury to her husband has rendered him incapable of performing these duties.

A suit of such a nature, whether brought by the husband or by the wife, has no legal or logical relation to the sections of the Damage Act amendatory of the common law and providing for recovery by designated parties and the survival of such rights of action where death has been caused in the manner specified in Sections 5425, 5426 and 5427, Revised Statutes 1909, which sections are counterparts of Lord Campbell's Act. An action for loss of consortium of a *living* spouse, whether brought by the husband or wife, is wholly independent of any of the provisions of the statutes referring to recoveries in case of *death,* and is grounded, in the case of the husband, upon elemental principles of the common law, and in the case of the wife upon the same principles of the common law recognizing a personal right in her to enjoy the consortium of her husband, coupled with the provisions of the enabling statute designed to establish the right of the wife to sue for and recover (as if a *femme sole*), among other things, "rights of action which have grown out of any violation of her personal rights." As to the enforcement of such causes of action, the statute adds: "Any such married woman may, in her own name and without joining her husband, as a party plaintiff, institute and maintain any action, in any of the courts of this State having juridiction, for the recovery of any such personal property, including *rights of action,* as aforesaid, with the same force and effect as if such

married woman was a *femme sole.*" [R. S. 1909, sec. 8309.] Thus, in plain language, the above statute, in express terms, gives a married woman the right to maintain an action for loss of consortium, if it be that this is a personal right vested in her by the marriage state. That the common law recognized a reciprocal right of consortium in the wife and husband (although unenforceable on the part of the wife until the advent of statutes striking off the feudal fetters from the property of married women) is a proposition which cannot be gainsaid under the authorities hereinafter quoted. It is obvious, therefore, that when, as has been shown above, the statute (R. S. 1909, sec. 8309) provides in express terms for the enforcement by the wife of a cause of action growing out of a violation of her *personal right* (established under the common law) to the society, love, protection and maintenance of her husband, it did, by that language, give her the absolute right, ever since the adoption of said statute (R. S. 1909, sec. 8309), to maintain an action like the present. The holding of the majority opinion that this action cannot be instituted by the wife would seem to be, therefore, "in the teeth" of the above quoted statute, if it be not also a practical denial of her right to due process and the equal protection of the law guaranteed by the Constitution of the United States (C. B. & Q. Ry. v. Chicago, 166 U. S. 226) which, *mutatis mutandis,* would entitle the husband to maintain an action for a negligent injury, depriving him of the consortium of his wife.

The opinion refiled as grounds of this dissent is, to-wit:

I. The petition alleges that the plaintiffs are husband and wife; that the defendant, the owner of an apartment building, hired the husband to do the work of janitor or fireman or engineer of said building; that in the course of such employment and while using the hose, pipe or similar appliance furnished to him to be attached to the boiler,

Allegations.

the same (by reason of its defective and unfit condition) burst or exploded while carrying off the steam or boiling water it was intended to conduct from the heating apparatus or boiler, and thereby temporarily blinded the husband and inflicted upon him the painful and permanent injuries described in this petition, which have disabled him to perform "any kind of work in the future;" that defendant negligently furnished this utensil to said husband and negligently required him to work in a place so ill lighted and narrow and so obstructed in front of the boiler where his duties were to be performed, that he could not escape from said place and thereby lessen the injuries suffered; that in addition to his other injuries, the "vital organs" of the husband have become affected; that the direct result of his injuries have deprived the plaintiff, his wife, of his consortium and his "care, protection, . . . companionship and society" and she will lose these in the future; that she will also be compelled to abandon "her customary work of a housekeeper" and "the earnings which she derived from such occupation;" wherefore she prayed judgment of $15,000.

Defendant's demurrers that the petition stated no cause of action, misjoinder of parties plaintiff, and the Statute of Limitations of five years, were sustained.

Plaintiffs declined to plead and duly appealed.

II. The first ground of demurrer presents the only question requiring any discussion. There was no misjoinder, for the statutes of this State expressly allow the wife, at her option, to sue with or without joining her husband. [R. S. 1909, secs. 8304, 8309, 1735.]

Grounds of Demurrer.

Neither is there any merit in the claim of the bar of the statute. The plaintiff wife is a married woman and hence the five-year Statute of Limitations did not run against her. [Schneiderheinze v. Berg, 269 Mo. 263; Bobb v. Taylor, 184 S. W. 1028; R. S. 1909, sec. 1894.]

This leaves for decision only the question of the sufficiency of the petition to state a cause of action.

The gravamen of the action is the negligence of defendant in furnishing the husband a defective appliance and an unsafe place in which to use it. Under the settled law of this State such a risk is never assumed by the servant. [Fish v. Railroad, 263 Mo. l. c. 124; George v. Railroad, 225 Mo. l. c. 407; Charlton v. Railroad, 200 Mo. l. c. 417, and cases cited.]

It necessarily follows that a case of actionable negligence is stated in the petition, and that the only question left is whether the plaintiff wife is entitled to recover therefor. She could have had no recovery when she occupied the status of a married woman at common law, for then her legal existence was merged in that of her husband. But under the Married Women's Acts in this State, beginning in 1875 and culminating in 1889, with slight amendments thereafter, a wife is to all intents and purposes a legal entity distinct from her husband and capable of contracting and being contracted with and suing and being sued, as fully as if she were an unmarried woman and *sui juris*. While the principles of the common law, previous to her statutory emancipation, debarred the wife from any legal redress in cases like the present, they nevertheless recognized fully the injury to her personal rights caused by the acts set forth in the petition and they affirmed such rights to be the same as those of which the husband would have been deprived had the injury in question been inflicted upon the wife (Flandermeyer v. Cooper, 85 Ohio St. 327; Holleman v. Howard, 119 N. C. 150; 13 R. C. L. par. 509, p. 1460), and though sanctioning a full right to recover in such cases on the part of the husband, they denied it to the wife, although an equal sufferer, because feudalism had decreed that she was a legal nonentity and incapable of maintaining any action for the violation of her rights as a wife caused by wrongful injuries inflicted upon her husband.

It is now the settled law that a wife may recover for the wrongful alienation of the affections of her

husband; that the cause of action in such case has its
origin in tort and rests upon the deprivation of her
personal right to his society, aid and affection. [1
Cooley on Torts (3 Ed.), p. 475; 13 R. C. L. p. 1444, par.
494, p. 1460, par. 509; Clow v. Chapman, 125 Mo. 101;
Nichols v. Nichols, 147 Mo. l. c. 400; Deford v. Johnson,
251 Mo. l. c. 256; Clark v. Hill, 69 Mo. App. l. c. 544;
Weber v. Weber, 113 Ark. 471; Jaynes v. Jaynes, 39
Hun, 40; Warren v. Warren, 89 Mich. 123; Gernerd v.
Gernerd, 185 Pa. 233, and cases cited; 26 Am. & Eng.
Ann. Cas. p. 990 et seq.] The ground of this action has
been stated with signal clearness and accuracy by BLACK,
J., in Clow v. Chapman, supra, whose reasoning has not
only been fully affirmed in this State, but has been
widely quoted elsewhere. That opinion was rendered
in 1894, after the adoption of the Married Woman's
Acts, with reference to which it said:

"The case then *turns* upon the effect to be given
to these statutes. . . . They give her an entirely
different standing from that occupied by her at com-
mon law. Her position is more like that of a wife under
the civil law. Instead of her legal existence being sus-
pended, as incorporated into that of her husband, she
is made to stand out in bold relief with a separate
and distinct legal existence as to her property and
also as to her *personal rights* and she may enforce all
such rights by proceedings in her own name independ-
ently of her husband. She is placed upon an equality
with her husband in many and indeed most respects.
By force of the marriage contract, husband and wife
are each entitled to the society and comfort of the
other, the one to as great an exent as the other."
(Italics ours). [Clow v. Chapman, supra, l. c. 106, 107.]

After referring to tangible property of married
women, our statute adds: "Including rights of action"
arising "out of any *violation of her personal rights*
. . . shall be and remain her separate property
. . . and any such married woman may . . . main-
tain any action in any of the courts of this State having
jurisdiction for the recovery of any such personal

property, including rights of action as aforesaid, with the same force and effect as if such married woman was a *femme sole.*" (Italics ours). [R. S. 1909, sec. 8309; Rice, Stix & Co. v. Sally, 176 Mo. l. c. 129; Johnson v. Johnson, 77 So. 335.]

Each spouse has a personal right to the consortium of the other. It was not denied even at common law, nor is it questioned in any of the decisions of the present day, whose rulings do not permit a recovery by a wife for the wrongful deprivation thereof. The injury suffered by a husband from the loss of the consortium of his wife is no more direct and immediate than that sustained by her from the loss of his society, aid and affection. Hence, there is no logical basis for the reason upon which some of the adverse rulings are based, that in such cases the injury sustained by the wife is not directly and proximately caused by the wrongful act preventing her husband from giving her the means of a livelihood—which it is his duty to provide—and from performing his conjugal duties. In the edition of Cooley on Torts, supra, the following paragraph is quoted from Foot v. Card, 58 Conn. 1:

"Upon principle this right in the wife is equally valuable to her as property, as is that of the husband to him. Her right being the same as his in kind, degree and value, there would seem to be no valid reason why the law would deny to her the redress which it affords to him . . . and the right, the injury and the consequent damage being admitted, there comes into operation another rule, namely, that the law will permit no one to obtain redress for wrong, except by its instrumentality, and it will furnish a mode for obtaining adequate redress for every wrong. This rule, lying at the foundation of all law, is more potent than, and takes precedence of, the reason that the wife is in this regard without the pale of the law because of her inferiority."

That doctrine is the established law in this State, as is shown in Clow v. Chapman, supra, and is rested upon the specific provisions of our Married Women's

Act. It has not been followed in some other states not having similar provisions in their statutes and for that reason adhering to the notions of the common law. This was illustrated in the recent case of Nieberg v. Cohen, 88 Vt. 1. c. 288, where the distinction between the statutes of that State and the rule adoped in this State upon the specific provisions of our statute, is noted in the following paragraph:

"The position of the wife will appear more fully from a reference to some cases where the loss of the husband's society and support was due to other causes than alienation of affection. In Clark v. Hill, 69 Mo. App. 541, the husband, a strong and healthy man, was made incurably insane by the defendant's repeated threats of violence; and the wife brough suit for the loss of her husband's support, comfort and society, and recovered. The ground stated was that under the statutes then existing a married woman could maintain an action in her own name for this loss. It appears from a case cited in the opinion that the statute referred to specifically included in the rights of action which were a part of the property rights conferred, those growing out of any violation of her personal rights. So the decision may be viewed as a construction of the Missouri statute. *No such clause is contained in our statute, and it is not necessary to inquire as to the effect of such a provision upon the common law rule.*"

Apparently there is no statute in Massachusetts of similar breadth and import to ours, for in the case of Feneff v. N. Y. Cent. Ry. Co., 203 Mass. 278, while admitting the equality of the husband and wife in respect of their reciprocal personal rights and the unquestionable right of the husband to recover for an injury to his wife causing a loss of such rights, the court adhered to the common law rule and held that the wife could not recover for personal injuries inflicted upon her husband causing a loss of consortium. It was distinctly stated, however, in the course of the opinion, that each had equal rights arising from the conjugal relation, the language in that respect being,

to-wit: "the right to the consortium of the other spouse seems to belong to husband and wife alike, and to rest upon the same reasons in favor of each." [Feneff v. R. R., supra, l. c. 280.] If the Commonwealth of Massachusetts had any statute such as ours, giving the wife a property in her personal rights as such and authorizing a suit for any violation of them, it was not noted in that case. Neither is any such statute adverted to in the Indiana case of Brown v. Kistleman, 177 Ind. 692, which simply followed the ruling of the Massachusetts case. These cases, and others of which they are a type, would have been only persuasive authority if they were based upon similar statutes, but in the absence of any showing of statues like ours in the jurisdictions where these rulings were made, they have no pertinency to the injury in hand. On the other hand, in those jurisdictions where there is a statute of tantamount force to the Missouri acts or where they are not trammeled by the common law, the courts have uniformly held that the wife may vindicate such rights in a personal action. [The Schooner Robert Lewers Co. v. Kekauoha, 52 C. C. A. 483; Hodgkinson v. Hodgkinson, 43 Neb. l. c. 271.]

III. The reasons given in the decisions against the right of a wife to recover for the *material* injury inflicted on her by a negligent act destroying the power of her husband to labor for her support and thereby imposing on her the task of supporting him and which renders him unable to perform the duties of a consort, are utterly inadequate to support the conclusions reached. It will be noted in all of these cases that they are rested upon the lack of suable capacity of the wife or upon the rules of the common law disabling her as against her husband to acquire title to the money awarded as damages for wrongful injury to him, wherefore the hobgoblin of a foolish consistency impelled the common law to adjudge she could not recover for an injury to her personal rights so caused, since the instant a recovery was

Material Injury.

had it would *belong* to the husband. Neither of these reasons can exist under the specific provisions of the law governing married women; for, as has been shown, the wife may now sue as a *femme sole* and the *awards* for any violation of her personal rights belong to her and not to her husband. [Womach v. St. Joseph, 201 Mo. l. c. 486 et seq·] It follows that under the terms of the Missouri statute, no reason can now exist why she may not recover for the deprivation of the maintainance as well as affection due from her husband as such, both of which have been lost to her by the wrongful and negligent act of the defendant, just as the husband could recover at common law and today, for the deprivation of any of the elements implied by a negligent injury inflicted on her. [Thompson v. St. Ry Co., 135 Mo. l. c. 221, 222; Elliott v. K. C., 210 Mo. 576; Montgomery v. Montgomery, 142 Mo. App. 486; Hoard v. Peck, 56 Barb. 202; Bailey v. Long, 90 S. E. 809.] In the suit of a husband for the loss of his consortium by the injury to his wife from the negligent overturning of a stage coach causing her death in a month, Lord ELLENBOROUGH said: "The plaintiff could recover for *the loss of wife's society and the distress of mind* he had suffered on her account, from the time of the accident to the moment of her dissolution." [Baker v. Bolton, 1 Camp. 493.] That ruling is the exact converse of the theory of the present action.

IV. This conclusion is upon the rule universally upheld in text-books and decisions, that the wife has the same right to the consortium as the husband; that under the enabling acts in this State she has the same right to sue for their infraction that he **Double Compensation.** has; that the proceeds of a violation of such "personal rights" are her separate estate and do not belong to him and could not be recovered in any suit by him alone; that all the rules and reasons existing at common law, preventing such a recovery by the wife for the violation of her personal rights by the negligent injury of her husband, while

sanctioning a converse right in him to recover, have been obliterated by our statutes abolishing the feudal conception of the legal submersion of the wife into the entity of her husband. The feudal system was inducted into England by William after he won at Hastings; it was the social and political basis of the stratocracies then in the zenith of their power on the continent of Europe. Its barbarous behests were imposed upon the conquered nation. and were infused into the common law and brought over to this country as a part of their heritage by the colonists. It has taken ages to eliminate them, but the unceasing evolution of the law in response to reason and social opinion, has extirpated many of the crudities, cruelties and absurd corollaries of feudalism from the body of the law, which is ceaselessly adjusting itself to the growth of society and the advance of civilization. And it is not too much to say that judicial progression has been carried forward in exact proportion as these notions have been relegated to the decayed system from which they sprang. So prone are the courts to cling to consuetudinary law, even after the reason for the custom has ceased or become a mere memory, that it has re quired hundreds of years to obtain the meed of justice for married women. Equity, administering the refined justice of the Roman law, has at times loosened the medieval manacles which feudalism imposed on the common law. Right reason, the constant corrector of customary law, has reformed social habits and created enlightened public thought—now crystalized into a clear and positive statute in this State—whose necessary import and only intelligible purpose was to destroy the last vestige of the odious injustice which denied to married women the full property rights of every other human being.

The courts of appeals have entirely •misconceived the *nature* of the *right* which a married woman acquires under the statute for a violation of her personal rights. By the express terms of the statute this is a

276 Mo.—41.

*property right* and belongs to her as such and becomes her sole and separate property. It is, therefore, a right which *is "affected"* by a negligent injury. Indeed, that it is a property right is affirmed not only by the text-writers, but by the very decisions in other jurisdictions which, for common law reasons or the lack of a local statute, deny the right to redress. The contrary notions of the courts of appeals are incorrect in premises and, therefore, unsound in conclusions (Gambino v. Coal & Coke Co., 175 Mo. App. 653; Stout v. Railroad, 172 Mo. App. 113) and should be disapproved.

It follows that the judgment in this case should be reversed and the cause remanded for further proceedings not inconsistent with this opinion. With the above views *Williams, J.,* concurs.