## 12037.   LAMB v. FULTON BAG & COTTON MILLS.

1 When a person is employed to do specific work and is in the exercise of a distinct and independent employment, and in the execution of this specific work is not under the immediate supervision and control of his employer, and the manner of doing the work and the employment, payment, and control of the labor is left entirely to the employee, the relation of master and servant does not exist, the party employed being an independent contractor. Moll on Independent Contractors and Employers' Liability, §§ 13, 14, 15, and 16.

2. The defendant corporation, the owner of cotton mills, made a contract for the repair of the roof of its buildings with one who was specially engaged in that line of work. By the terms of the contract the defendant agreed to pay a fixed sum to the contractor and was to furnish a portion of the material to be used in the doing of the work. All the particulars in connection with the doing of the work, the employment, payment and control of the labor, and the direction and supervision of the work, were left entirely to the contractor. A minor under 14 years of age was employed by the contractor to help make the repairs, for which he was to be paid by the contractor a certain wage. The defendant had nothing to do with the selection of the minor, had no authority to discharge him, and did not direct him in the manner of doing his work. While engaged in this work he fell off the roof of the building and was killed. *Held*: The minor was not a servant of the defendant corporation at the time of his death, and the defendant was not responsible for his wrongful employment, and not liable in damages to his widowed mother for his death. Civil Code (1910), §§ 4414, 4415 (5); Harris v. McNamara, 97 Ala. 181 (12 Sou. 103); Casement v. Brown, 148 U. S. 615 (13 Sup. Ct. 672, 37 L. ed. 582).

3. The evidence substantially stated above showing clearly that the plaintiff's minor son was not the servant of the defendant corporation at the time of his death, but was the servant of the independent contractor, and

this being the controlling question in the case, there was no error in the award of a nonsuit.

4. The existence of the relation of master and servant between the plain-tiff's minor son at the time of his death and the defendant corporation being a condition precedent to the right to recover either for the loss of the minor's services during his minority or for the value of his life, arising from his wrongful employment or from negligence, and it being proved by the plaintiff's evidence that this relation did not exist, it is unnecessary to decide the questions raised by the assignments of error as to the sustaining of the demurrers to the 1st and 3d counts of the petition.

DECIDED MARCH 26, 1921.

Action for damages; from city court of Atlanta — Judge Reid. November 4, 1920.

*Walter S. Dillon, C. M. Lancaster,* for plaintiff.

*Rosser, Slaton, Phillips & Hopkins,* for defendant.

HILL, J.  Mrs. Lamb sought to recover for the wrongful death of her minor son.  Her petition contained four counts. A demurrer was filed to all of the counts, and was sustained as to counts 1, 3, and 4, and overruled as to count 2.  Exceptions pendente lite were preserved as to the judgment sustaining the demurrer as to counts 1 and 3.  No exception was taken to the judgment on the demurrer as to count 4.  The case went to trial on count 2, and on motion of counsel for the defendant, at the conclusion of the plaintiff's evidence, a nonsuit was granted.  The substantial allegations of count 2, to which the evidence applied, were that John Lamb, the minor son of the plaintiff, his widowed mother, was employed by the defendant without her knowledge or consent, and was placed at work at a dangerous employment, at which he was killed.  This count contains no allegation of negligence, and seeks to recover the value of the child's services up to the age of twenty-one.  The suit is based upon the theory that the defendant, having em-ployed the plaintiff's minor son without her consent, is liable in any event for the loss of his services resulting to her by reason of his homicide, and the issue determined on the suit was as to whether the minor, at the time of his death, was employed by the defendant as its servant, and the judgment of nonsuit is based upon the conclusion of the court that the evidence did not disclose the existence of this relation, and therefore that

there can be no recovery based upon the theory of master and servant, set up under the second count. Incidentally it may be remarked in passing that the allegation in this count, that the plaintiff's minor son was put at dangerous work without her consent, is not supported by any evidence. The issue as to whether he was employed by the defendant as its servant depends upon the construction of the evidence, and the evidence as to this issue, substantially stated, is as follows:

The plaintiff testified that at the time of her son's death he was working, as she thought, for Mr. C. R. Henry, and not for the defendant. She testified further, that, while she knew that her son was working for Henry, she had not limited the character of services to be performed by him while in Henry's employment. He made $1.50 per day while working for Henry, which sum he turned over to her. One Mathers, another witness for the plaintiff, testified that at the time of Lamb's death he, the witness, was employed by C. R. Henry, who was engaged in the general tin business, doing all kinds of sheet-metal work, roofing, guttering, etc.; that he, acting for Henry Brothers (which was the trade name of C. R. Henry), made a contract to do certain described work for the defendant, the Fulton Bag & Cotton Mills, this contract being between C. R. Henry, in the business name of Henry Brothers, and the Fulton Bag & Cotton Mills; that Mathers made the contract with the Fulton Bag & Cotton Mills for Henry Brothers to do the work for $1.75 per hour for a man and his helper, which were to be supplied by Henry Brothers; that the Fulton Bag & Cotton Mills showed the witness, Mathers, representing Henry Brothers, the work which the latter was to do, consisting of putting up gutter-pipes, down-spouts, etc. The Fulton Bag & Cotton Mills had some material which it agreed to turn over to Henry Brothers to be used in the work. Henry Brothers were to do the work in their own way, using their own skill, and without any direction from the Fulton Bag & Cotton Mills, except that when Henry Brothers had finished doing the work on one building, the Fulton Bag & Cotton Mills showed them the next building on which to work, but the work contracted to be done was one entire job. Mathers, representing Henry Brothers, selected John Lamb, the plaintiff's son, who was employ-

ed by Henry Brothers to help him do the work to be done by Henry Brothers under their contract with the defendant corporation. Lamb appeared to be about 16 or 17 years old at the time of his employment by Henry Brothers, and stated that he was 16, and he had been working for Henry Brothers about a year and a half, doing work of the same character as was to be done for the defendant corporation by Henry Brothers. Ninety-five per cent. of the work that Lamb did was roofing work. He was paid $1.50 per day by Henry Brothers for nine hours work, and Mathers was paid $5 per day by Henry Brothers for nine hours work, while Henry Brothers received from the defendant corporation, under the contract, $1.75 per hour. Henry Brothers selected Mathers and Lamb, who was employed by them generally, to do the special work under the contract for the Fulton Bag & Cotton Mills. The Fulton Bag & Cotton Mills showed Mathers the work which was to be done under its contract with Henry Brothers, which consisted of putting up gutter-pipes, down-spouts, etc. The Fulton Bag & Cotton Mills loaned to Mathers a negro to help him in doing the work generally under the contract with Henry Brothers, the duty of the negro being to pull the scaffold from place to place as needed. This was a voluntary act on the part of the defendant, for under the contract it was under no obligation to supply any help to Henry Brothers. When Lamb fell off the building Mathers did not know why he was on the roof or that he was then doing any work at all on the roof. The contract between the defendant and Henry Brothers did not specify the number of hours they were to work for the defendant, but Henry Brothers regulated their own hours. Mathers and Lamb, while doing the work embraced in the contract, went in and out of the defendant's mill at pleasure, and when Lamb was killed, Mathers, acting for Henry Brothers, hired another man to finish the work that Lamb was doing. The payment for the work was made directly to C. R. Henry, doing business as Henry Brothers. The Fulton Bag & Cotton Mills had no control over Henry Brothers, Mathers, or Lamb, but could order the latter two off of the premises. " They did not have the right to fire either Mathers or Lamb at any time, because they were working for C. R. Henry." The Fulton Bag & Cotton Mills had no knowledge as

to what pay either Mathers or Lamb was getting from Henry Brothers. A letter was introduced from the Fulton Bag & Cotton Mills, confirming the contract made with Henry Brothers through Mathers, and further showing that the defendant was to pay for any material used in doing the work, and was to pay Henry Brothers $1.75 per hour to cover the time of both men on the job. This is a substantial statement of the evidence for the plaintiff, on the issue as to whether the plaintiff's son, at the time of his death, was the employee of the defendant corporation, or was employed by an independent contractor to do the work for the Fulton Bag & Cotton Mills.

It is not necessary to add anything further to what is said in the headnotes.

*Judgment affirmed.   Jenkins, P. J., and Stephens, J., concur.*