32547.   McDADE *v.* WEST *et al.*

DECIDED NOVEMBER 3, 1949.   REHEARING DENIED NOVEMBER 23, 1949.

*Moreton Rolleston Jr.,* for plaintiff.

*M. Cook Barwick, Gambrell, Harlan & Barwick, James C. Hill,* for defendant.

FELTON, J. ■ The court is evenly divided on the question whether a wife has a cause of action for damages for the loss of consortium due to injuries suffered by her husband.

The views of Sutton, C. J., MacIntyre, P. J. and Worrill, J., to the effect that no such action will lie, are are follows: It has almost universally been held that a wife has no such cause of action in the absence of a statute giving the right. The cases denying the right base their reasoning mainly on the facts that no such remedy existed at common law; the married women's acts grant no such remedy; the injury is a direct injury to the

husband for which he can sue and the damage to the wife is too remote and indirect to permit her to recover. 27 Am. Jur. § 514, p. 114; 5 A.L.R. 1049; 37 A.L.R. 897; 59 A.L.R. 681; A.L.R. Permanent Blue Book, p. 16; Restatement, Law of Torts, Vol. 3, p. 496, sec. 695; 30 C. J. p. 973, sec. 693; 13 R.C.L. p. 1443, sec. 493. The Supreme Court of North Carolina in the case of Hipp v. Dupont de Nemours & Co., 182 N. C. 9 (108 S. E. 318, 18 A.L.R. 873), held that in a case where the husband was mutilated but not killed the wife had a cause of action for loss of consortium due to negligent injuries. That court, in a case where the husband was killed, repudiated the ruling in the Hipp case stating: "After diligent research, we have failed to find a single decision (apart from the intimation in Hipp v. Dupont de Nemours & Co., supra) which approves the wife's right to recover damages for the loss of consortium under the circumstances appearing in the instant case, and to sanction such right of recovery would be tantamount to the recognition of a doctrine utterly at variance with the most enlightened judicial opinion prevailing in other jurisdictions." We find no case, other than the Hipp case, holding that a wife has such a cause of action. We find no case in Georgia on the question. Cases allowing the wife a recovery for damages for alienation of affections, criminal conversation, etc., are distinguished by the fact that these are direct and intentional wrongs, etc.

The views of Felton, Gardner and Townsend, JJ., to the effect that such an action will lie, are as follows: While there may be good reasons for denying a wife a right to sue for loss of consortium due to a negligent injury to her husband, we do not agree with the reasons which the courts seem to have unanimously adopted. First, it is said that a wife had no such right at common law and the married women's acts confer none eo nomine. We agree with both of these statements. However, though the act of 1866 gives no such right of action eo nomine, the courts of this and other States hold that a wife has a cause of action for a wilful destruction of or a wilful injury to her consortium rights, despite the fact that no statute gives the right. At common law a wife could not sue in trover for a horse, but it was because she could not own a horse. Without an enabling statute she may now recover her horse, even from her husband.

Code § 53-502 provides: "All the property of the wife at the time of her marriage, whether real, personal, or choses in action, shall be and remain the separate property of the wife; and all property given to, inherited, or acquired by the wife during coverture shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default, or contract of the husband. (Acts 1866, pp. 146, 147)." See also Code § 2-2801. The courts which give the right of action to the husband deny it to the wife. If it is not too indirect and remote as to a husband, neither is it so as to a wife. The right in the wife is just as valuable to her as it is to the husband. A husband's recovery for his loss is not a recovery of his wife's loss. If the wife suffered loss of a valuable right the common law would have given her a cause of action. "A statutory right cannot change except by action of the lawmaking power of a state. But it is the boast of the common law that 'its flexibility permits its ready adaptability to the changing nature of human affairs.' So that, when-. ever, either by the growth or development of society, or by the statutory change of the legal status of any individual, he is brought within the principles of the common law, then it will afford to him the same relief that it has theretofore afforded to others coming within the reason of its rules. If the wrongs of the wife are the same in principle as the wrongs of the husband, there is now no reason why the common law should withhold from her the remedies it affords to the husband." Flandermeyer v. Cooper, 85 Ohio St. 327 (98 N. E. 102, 40 L.R.A. (N.S.) 360, Ann. Cas. 1913A, 983), quoted in Hipp v. Dupont de Nemours & Co., supra. "Upon principle, this right in the wife is equally valuable to her as property, as is that of the husband to him. Her right being the same as his in kind, degree, and value, there would seem to be no valid reason why the law should deny to her the redress which it affords to him. . . The gist of the action is the loss of consortium, which includes the husband's society, affection, and aid." Cooley on Torts, 3rd Ed., Vol. 1, p. 477. "There can be no reasonable contention but that the wife suffers the same injury from the loss of consortium as the husband suffers from that cause. His right is not greater than hers. Each is entitled to the society and affection of the other. The rights of both spring from the marriage contract,

and in the very nature of things must be mutual, and, while this was always true of the marriage relation, yet there was a time in the history of our jurisprudence when the legal status of the wife was such that she could not, at common law, maintain an action of this character. Now her legal status is the same as that of her husband. She has the same right to the control of her separate property, the same right to sue in her own name, and, in a word, is in the full enjoyment of every right that her husband enjoys, so that she comes clearly within the principles of the common law that allow a right of action by the husband for damages for the loss of the consortium of his wife. Either we must hold that the common law is fixed, unchangeable, and immutable, that it possesses no such flexibility as will permit its ready adaptability to changing conditions of human affairs, or that, when every reason and every theory for denying the wife the same rights as the husband have entirely disappeared from our jurisprudence, she is now equally entitled with her husband to every remedy that the common law affords; and we have no hesitation in adopting the latter view." Flandermeyer v. Cooper, supra; 18 A.L.R. 878-9. Without further quotations, we shall simply refer to the decision in the Hipp case, with its various citations and especially the reference to the dissenting opinion of Chief Justice Bond in the case of Bernhardt v. Perry, 276 Mo. 612 (208 S. W. 462). We do not think that any of the reasons advanced by the authorities for denying a wife such a right of action are valid. These reasons seem to be: (1) No statute gives the right; (2) the injury is one for which the husband can sue, and (3) the injury is remote and consequential as to the wife. Our answer to (1) is that the common law gives a remedy wherever a right is violated, and so does our law in Code § 85-1802, and see especially Sessions v. Parker, 174 Ga. 296 (162 S. E. 790). Our answer to (2) is that the wrong is not one for which the husband can sue. A husband can sue for his loss of the consortium of his wife but not for her loss of his society. Our answer to (3) is that if the injury is not too remote and consequential when the husband sues for loss of consortium it is not so when a wife sues. The wrong is a direct wrong to the valuable interests of the wife, whether intentional or not, the damages for which the husband cannot sue, and in

these days of increased enlightenment her rights should be recognized and enforced.

■ Construing the petition most strongly against the plaintiff on demurrer the petition is construed to mean that the defendants employed an independent contractor to paint the smokestack; that so much of the premises as were necessarily used for the purpose of painting the smokestack were placed in the exclusive possession of the contractor and that the defendants did not retain the right to direct or control the time and manner of executing the work. The petition alleged that the work was being done in a manner customary with painters but it did not allege that the defendants knew what that manner was. Under the facts alleged, and in view of the failure to allege other facts, we do not think that the petition alleges facts showing a duty on the defendants' part to warn the servant of an independent contractor as to the condition of the smokestack. Presumably the independent contractor was employed for his superior knowledge of and experience with smokestacks and possessed the skill necessary to determine the condition of the smokestack. Furthermore, if it could be said that the duty to procure inspection by an expert is the duty of ordinary care, if it is for one party, it is the same for another, and the parties had equal means to discover the defects. Our decisions seem to predicate the non-liability of owners of property, or contractees, to the employees of independent contractors, under circumstances where the work is free from the direction and control of the owner, or contractee, and possession of the premises is not retained by the contractee, either in whole or in part, on the fact that the servants of the contractor, or others coming upon the premises, at the invitation of the independent contractor, are invitees of the independent contractor and not of the contractee. *Butler* v. *Lewman*, 115 *Ga.* 752 (2) (42 S. E. 98); *Lamb* v. *Fulton Bag & Cotton Mills*, 26 *Ga. App.* 572 (106 S. E. 607); *Huey* v. *Atlanta*, 8 *Ga. App.* 597 (70 S. E. 71); *Johnson* v. *W. & A. Ry. Co.*, 4 *Ga. App.* 131 (60 S. E. 1023); *Central of Ga. Ry. Co.* v. *Lawley*, 33 *Ga. App.* 375 (4) (126 S. E. 273). The ruling in *Fulton Ice & Coal Co.* v. *Pece*, 29 *Ga. App.* 507 (116 S. E. 57) is not contrary to what is herein ruled because there the alleged duty to inspect, at least in part, referred to

matters which were independent of the appliances which the plaintiff was employed to repair. Here the defect in the smokestack is incidental to the undertaking of the plaintiff's husband to paint. The smokestack was in effect used as a ladder and it seems to us that the independent contractor and his servant assumed the risk of using it as a ladder, especially in the absence of an allegation that the defendants knew that it was to be so used. This court cannot say that, as a matter of common knowledge, painters ascend smokestacks such as alleged in this case in the manner here alleged. See, in this connection, *Culbreath v. M. Kutz Co.*, 37 *Ga. App.* 425 (140 S. E. 419); *Babcock Bros. Lbr. Co.* v. *Johnson*, 120 *Ga.* 1030 (48 S. E. 438). The petition alleges only constructive notice of the defective condition of the smokestack. Of course, if actual notice had been alleged, a different ruling might be required, but we make no ruling on that state of facts.

The court did not err in sustaining the demurrer to the petition on the ground that it alleged no actionable negligence against the defendants.

Under the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, page 232, Code, Ann. Supp., § 24-3501) this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., and Gardner, Townsend, and Worrill, JJ., concur.*