**HITAFFER v. ARGONNE CO., Inc.**

No. 10235.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 9, 1950.

Decided May 29, 1950.
Writ of Certiorari Denied Oct. 16, 1950.
See 71 S.Ct. 80.

Mr. Edgar A. Wren, Washington, D. C., for appellants.

Mr. J. Harry Welch, Washington, D. C., with whom Messrs. H. Mason Welch, John R. Daily, J. Joseph Barse and Frank L. Shigo, all of Washington, D. C., were on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and FAHY, Circuit Judges.

CLARK, Circuit Judge.

The appeal in the instant case presents two problems. The first involves the question of whether or not a wife has a cause of action for loss of *consortium* resulting from a negligent injury to her husband, and the second entails an interpretation of the breadth of the exclusive liability provisions[1] of the Longshoremen's and Harbor Workers' Compensation Act,[2] (hereinafter referred to as the "Act"), the applicable Workmen's Compensation statute for the District of Columbia,[3] which provides exclusive liability for employers.

Appellant's husband was injured while in appellee's employ. As a result thereof he suffered and sustained severe and permanent injuries to his body and in particular in and about his abdomen, and as a consequence appellant has been deprived of his aid, assistance, and enjoyment, specifically sexual relations.

The appellant's husband thereafter received compensation for his injuries pursuant to the provisions[4] of the aforesaid Workmen's Compensation statute.

Subsequently, the instant action was filed by the wife. The defendant-appellee thereupon moved for a summary judgment on the grounds that the court lacked jurisdiction and the complaint failed to state a cause of action. The motion was granted and judgment entered for appellee. This appeal has followed to test the validity of that order.

Inasmuch as it would be unnecessary for us to decide the statutory question if it be found that the complaint fails to state a cause of action, we shall first deal with the question of whether or not a wife may bring an action for loss of *consortium* in cases where the injury to the husband resulted from the defendant's negligence.

Although this is the first time this question has been presented to this court, we are not unaware of the unanimity of authority elsewhere denying the wife recovery under these circumstances.[5] As a

1. 44 Stat. 1426, 33 U.S.C.A. § 905.

2. 44 Stat. 1424 et seq., 33 U.S.C.A. § 901 et seq.

3. D.C.Code 1940, §§ 36—501, 36—502, 33 U.S.C.A. § 901 note.

4. 44 Stat. 1427, 33 U.S.C.A. §§ 907, 908.

5. Tyler v. Brown-Service Funeral Homes Co., 1948, 250 Ala. 295, 34 So.2d 203; Giggey v. Gallagher Transp. Co., 1937, 101 Colo. 258, 72 P.2d 1100; Marri v. Stamford St. R. Co., 1911, 84 Conn. 9, 78 A. 582, 33 L.R.A., N.S., 1042, Ann.Cas. 1912B, 1120; Sobolewski v. German, 1924, 2 W.W.Harr. 540, 32 Del. 540, 127 A. 49; McDade v. West, 1949, 80 Ga.App. 481, 56 S.E.2d 299; Boden v.

Del-Mar Garage, 1933, 205 Ind. 59, 185 N.E. 860; Brown v. Kistleman, 1912, 177 Ind. 692, 98 N.E. 631, 40 L.R.A.N.S., 963; Cravens v. Louisville & N. R. Co., 1922, 195 Ky. 257, 242 S.W. 628; Emerson v. Taylor, 1918, 133 Md. 192, 104 A. 538, 5 A.L.R. 1045; Gearing v. Berkson, 1916, 223 Mass. 257, 111 N.E. 785, L.R. A.1916D, 1006; Bolger v. Boston Elevated R. R. Co., 1910, 205 Mass. 420, 91 N. E. 389; Feneff v. N. Y. Cent. & H. R. R. Co., 1909, 203 Mass. 278, 89 N.E. 436, 24 L.R. A., N.S., 1024, 133 Am.St.Rep. 291; Harker v. Bushouse, 1931, 254 Mich. 187, 236 N.W. 222; Eschenbach v. Benjamine, 1935, 195 Minn. 378, 263 N.W. 154; Nash v. Mobile & O. R. Co., 1928, 149 Miss. 823, 116 So. 100, 59 A.L.R. 676; Bern-

matter of fact we have found only one case in which the action was allowed,[6] and that authority has since been effectively overruled.[7] But after a careful examination of these cases we remain unconvinced that the rule which they have laid down should be followed in the District of Columbia. On the contrary, after piercing the thin veils of reasoning employed to sustain the rule, we have been unable to disclose any substantial rationale on which we would be willing to predicate a denial of a wife's action for loss of *consortium* due to a negligent injury to her husband.

Analysis of the cases in opposition to the position which we are taking in this opinion will reveal that the synthesizations which follow are fairly representative of the sundry reasons assigned for denying the wife a right of recovery.

One group of cases base their results on the theory that although in the abstract the term *"consortium"* contains, in addition to material services, elements of companionship, love, felicity, and sexual relations, in cases of injury to the *consortium* resulting from negligence the material services are the predominant factor for which compensation is given.[8] From this point they variously argue: (1) That since the wife has no right as such to her husband's services, she has no cause of action, although, of course, the husband, having always been entitled to his wife's services, still has a right of action;[9] (2) That the Emancipation Acts,[10] having given a wife a right to the fruits of her own services, have placed the husband in the same position as the wife in number (1) so that neither may bring an action,[11] except that a husband may recover for monies actually expended.[12] The difficulty with adhering to these authorities is that they sound in the false premise that in these actions the loss of services is the predominant factor. This distinction lacks precedent.[13] It is nothing more than an arbitrary separation of the various elements of consortium devised to circumvent the logic of allowing the wife such an action. The development of this fiction has been attributed to the use of words.

"Redundancy, in common law pleading is familiar to all lawyers. Thus when pleading alleged loss of services, conjugal affection, companionship, etc., no distinct functions were intended. It is the same kind of verbiage that we still use in deeds,

hardt v. Perry, 1919, 276 Mo. 612, 208 S.W. 462, 13 A.L.R. 1320; Gambino v. Mfgrs'. Coal & Coke Co., 1913, 175 Mo. App. 653, 158 S.W. 77; Stout v. Kas. City Term. Ry. Co., 1913, 172 Mo.App. 113, 157 S.W. 1019; Tobiassen v. Polley, 1921, 96 N.J.L. 66, 114 A. 153; Maloy v. Foster, 169 Misc. 964, 1945, 8 N.Y.S. 2d 608; Landwehr v. Barbas, 1934, 241 App.Div. 769, 270 N.Y.S. 534; Goldman v. Cohen, 1900, 30 Misc. 336, 63 N.Y.S. 459; Hinnant v. Tide Water Power Co., 1925, 189 N.C. 120, 126 S.E. 307; McDaniel v. Trent Mills, 1929, 197 N.C. 342, 148 S.E. 440; Helmstetler v. Duke Power Co., 1945, 224 N.C. 821, 32 S.E.2d 611; Smith v. Nicholas Bldg. Co., 1915, 93 Ohio St. 101, 112 N.E. 204, L.R.A. 1916E, 700, Ann.Cas.1918D, 206; Howard v. Verdigris Val. Elec. Co-op., Okl. 1949, 207 P.2d 784; Sheard v. Oregon Elec. Ry. Co., 1931, 137 Or. 341, 2 P.2d 916; Kosciolek v. Portland Ry., Light & Power Co., 1916, 81 Or. 517, 160 P. 132.

6. Hipp v. E. I. Dupont de Nemours & Co., 1921, 182 N.C. 9, 108 S.E. 318, 18 A.L.R. 873.

7. Hinnant v. Tide Water Power Co.; McDaniel v. Trent Mills; Helmstetler v. Duke Power Co., supra, note 5.

8. See, e. g., Marri v. Stamford St. R. Co., supra, note 5.

9. Boden v. Del-Mar. Garage; Brown v. Kistleman; Stout v. Kansas City Term. Ry. Co., supra, note 5.

10. Legislation relieving married women from their common law disabilities shall be referred to as "Emancipation Acts". For the applicable statute in the District of Columbia, see note 29, infra.

11. Marri v. Stamford St. R. Co.; Bolger v. Boston Elevated R. R. Co.; Harker v. Bushouse; Helmstetler v. Duke Power Co., supra, note 5.

12. See, e. g., Helmstetler v. Duke Power Co., supra note 5.

13. See, Guevin v. Manchester St. Ry., 1916, 78 N.H. 289, 99 A. 298, L.R.A. 1917C, 410; Lippman, The Breakdown of Consortium, 30 Col.L.Rev. 651, 667 (1930); 9 Ind.L.J. 182, 183 (1933).

wills and pleadings. On this, however, has been postulated an absurd division of consortium into services on the one hand, and conjugal affection, etc., on the other. The cases show that this separation is arbitrary and, in the main, fictitious." [14]

*Consortium,* although it embraces within its ambit of meaning the wife's material services, also includes love, affection, companionship, sexual relations, etc., all welded into a conceptualistic unity. And, although loss of one or the other of these elements may be greater in the case of any one of the several types of invasions from which *consortium* may be injured, there can be no rational basis for holding that in negligent invasions suability depends on whether there is a loss of services. It is not the fact that one or the other of the elements of *consortium* is injured in a particular invasion that controls the type of action which may be brought but rather that the *consortium* as such has been injured at all. Hence we are constrained to reject the cases which refuse to allow the wife to sue in these actions for the reason that we are unable to accept the premise. We likewise reject those cases which go one step further in disallowing the husband such an action for the further reason that he has always been allowed to sue for loss of his *consortium* due to negligence in this jurisdiction.

Another group of cases which similarly appear to place principal emphasis on the element of services in these actions hold that in negligent invasions of the *consortium* the wife has no cause of action because the husband, who is under a legal duty to support his wife according to his station in life, recovers in his action for the tort, as an element of his damages, for any impairment of his ability to perform his obligation, and thus the wife indirectly recovers for the value of any loss of her *consortium.* Any other conclusion, they reason, would result in a double recovery. The husband, on the other hand, is allowed the action when the wife is injured, because she is under no corresponding duty to him.[15] Of course, as we have already pointed out, there is no foundation for the statement that the predominant factor involved in negligence cases of this type is the element of material services. For that reason we cannot accept their argument. There is more to *consortium* than the mere services of the spouse. Beyond that there are the so-called sentimental elements to which the wife has a right for which there should be a remedy. We do agree, however, that if the wife is allowed to sue, there could be a double recovery in regard to the service element of *consortium,* if the husband's recovery is not taken into account in measuring the wife's damages and we shall deal with the problem hereinafter in more detail.

Other cases following the reasoning of the foregoing authorities have realized, however, that the sentimental elements of the consortium are injured in negligent invasions. Thus, in order to deny the wife a right to recover for love, affection, conjugal relations, etc., they have variously concluded: (1) That in negligence cases the purpose of the damages is to compensate the injured person for the direct consequences of the wrong. The injury to the wife is indirect and so not compensable;[16] (2) That her injuries are too remote and consequential to be capable of measure;[17] (3) That the common law recognized no cause of action for the loss of the so-called sentimental elements of *consortium* and the acts have given the wife no new cause of action;[18] and (4) That no action for loss

14. Lippman, supra, note 13, at p. 668.

15. Bernhardt v. Perry; Eschenbach v. Benjamine; Gambino v. Mfgrs'. Coal & Coke Co.; Giggey v. Gallagher Transp. Co.; supra, note 5.

16. Brown v. Kistleman; Feneff v. N. Y. Cent. & H. R. R. Co.; Gambino v. Mfgrs'. Coal & Coke Co.; Goldman v. Cohen; Howard v. Verdigris Val. Elec. Co-op.; Kosciolek v. Portland Ry., Light & Power Co.; McDade v. West; supra, note 5.

17. Feneff v. N. Y. Cent. & H. R. R. Co.; Gambino v. Mfgrs'. Coal & Coke Co.; Stout v. Kansas City Terminal Ry. Co.; supra, note 5.

18. Feneff v. N. Y. Cent. & H. R. R. Co.; Stout v. Kansas City Term. Ry. Co.; supra, note 5.

of *consortium* was ever allowed in which there was no showing of the loss of some services, and since the wife cannot show such a loss she has no action.[19] None of these cases commend themselves to us on the basis of their logic.

As to those authorities which hold that the injury to the wife is not compensable because it is indirect, we simply state that if that be so then it would likewise be true in the husband's suit. But such is not the rule here. Invasion of the *consortium* is an independent wrong directly to the spouse so injured.[20] The mere fact that the loss of one or the other of the elements thereof may have been indirectly redressed in another's suit, does not make the injury to the remaining elements any less direct.

■ The argument that the injuries of which a wife complains are too remote and consequential fails for two reasons. In the first place, we are committed to the rule in negligence cases that where in the natural and continual sequence, unbroken by any intervening cause, an injury is produced which, but for the negligent act would not have occurred, the wrongdoer will be liable.[21] And it makes no difference whether or not that particular result was foreseeable.[22] Secondly, if such a rule were valid there could be no basis for distinguishing between an action by a husband and one by the wife. In both cases the damages for the sentimental elements would be too remote and consequential; and yet we do not apply such a rule in the husband's action. And, furthermore, there could be no reason for the allowance of an action for criminal

conversation or alienation of affections in cases where the husband condoned the wife's conduct, for obviously there would be no disruption of services; yet under such circumstances, it has been held that the husband may sue the seducer.[23] The same would also be true in cases where it has been held that a husband has a cause of action for criminal conversation though living apart from his wife.[24] Here too there could be no showing of a loss of services. In both cases the only injury to the spouse's *consortium* lies in the sentimental area.

Within the rationale of the cases just cited,[25] allowing a husband recovery in cases where he can show no loss of services, lies the destruction of the authorities which hold that the common law recognized no cause of action for the loss of the so-called sentimental elements of the *consortium* alone, and the cases which further refine the rule by holding that an action for the loss of the sentimental elements cannot be allowed unless there is a showing of a loss of some material services. There is no judicial precedent for these rules, and the allowance of the action where no loss of material service is shown effectively destroys them.

Finally, there are a few cases which hold that the wife's interest in the marital relation is not a right of property or derived from a contract of bargain and sale and it lies in an area into which the law will not enter except of necessity.[26] But be that as it may for those jurisdictions, we are nonetheless here committed to a different rule.[27]

19. Boden v. Del-Mar Garage; Feneff v. N. Y. Cent. & H. R. R. Co.; Smith v. Nicholas Bldg. Co.; supra, note 5.

20. Lansburgh & Bro. v. Clark, 1942, 75 U. S.App.D.C. 339, 127 F.2d 331.

21. Howard v. Swagart, 1947, 82 U.S.App. D.C. 147, 161 F.2d 651; S. S. Kresge Co. v. Kenney, 1936, 66 App.D.C. 274, 86 F.2d 651.

22. Washington, Alexandria & Mt. Vernon Ry. Co. v. Lukens, 1909, 32 App.D.C. 442.

23. Clouser v. Clapper, 1877, 59 Ind. 548; Smith v. Hockenberry, 1904, 138 Mich. 129, 101 N.W. 207; Sikes v. Tippins,

1890, 85 Ga. 231, 11 S.E. 662; Guilbault v. Marcoux, 1921, 121 Me. 568, 115 A. 468; Peak v. Rhyno, 1925, 200 Iowa 864, 205 N.W. 515.

24. Pierce v. Crisp, 1935, 260 Ky. 519, 86 S.W.2d 293; Cross v. Grant, 1883, 62 N. H. 675, 13 Am.St.Rep. 607; Michael v. Dunkle, 1882, 84 Ind. 544, 43 Am.Rep. 100; Browning v. Jones, 1893, 52 Ill.App. 597.

25. Supra, notes 23 and 24.

26. Brown v. Kistleman; Goldman v. Cohen, supra, note 5.

27. Dodge v. Rush, 1906, 28 App.D.C. 149, 151–152, 8 Ann.Cac. 671.

"The modern rule is thus well stated by the Court of Appeals of New York: 'The actual injury to the wife from loss of *consortium*, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives each the same rights in that regard. Each is entitled to the comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband and to the wife as wife. *Any interference with these rights, whether of the husband or of the wife, is a violation, not only of natural right, but also of a legal right arising out of the marriage relation.* * * * As the wrongs of the wife are the same in principle, and are caused by acts of the same nature, as those of the husband, the remedy should be the same'. Bennett v. Bennett, 116 N.Y. 584, 590, 23 N.E. 17, 6 L.R.A. 553. * * *

"The underlying ground of the common-law rule of discrimination between husband and wife in respect of this right, namely, the incapacity of the wife to maintain a separate action for a tort, has been swept away by the modern legislation that has so generally relieved the wife of the ordinary disabilities of coverture." [Emphasis added.]

█ It is clear to us, in light of this plain broad language, that in order to circumvent its impact on all cases involving the loss of *consortium*, whether by the husband or the wife, we would have to engage in the legal-istic gymnastics [28] which we are here criticizing. There can be no doubt that the expressed view of this court is that the husband and the wife have equal rights in the marriage relation which will receive equal protection of the law. That these rights existed prior to the passage of the Married Women's Act [29] cannot be doubted. The Act simply removed the wife's disability to invoke the law's protection. And what we have said in this regard is equally applicable to the large number of cases which satisfy themselves with simply stating that the wife had no such action at common law and the Emancipation Acts gave her no new causes of action. [30] It is not for us, at this late date under the modern concepts of the marital relations, to deny the wife legal protection of this right.

The incongruity of the position taken by the authorities is further demonstrated in those cases where they have attempted to explain the reason for allowing the wife to sue for the so-called intentional or malicious invasions to her consortium, [31] while denying her the right to sue when the very same interest is injured due to the defendant's negligence. Where this denial is predicated on the rationale that a wife's interest in the marital relation lies in an area into which the law will not enter, they hold that in cases of alienation of affections, etc., necessity compels the law to step in in order to inflict the seducer or enticer with heavy damages by way of punishment and atonement rather than compensation. [32] The civil side of the court cannot permit an award of punitive damages except as incidental to an actionable civil wrong.

28. See, e. g., Stout v. Kas. City Term. Ry. Co.; Sheard v. Oregon Elec. Ry. Co.; supra, note 5. Compare Clark v. Hill, 1897, 69 Mo.App. 541 with Gambino v. Mfgrs'. Coal & Coke Co., supra, note 5.

29. D.C.Code 1940, § 30—208, provides in part: "Married women shall have power to * * * sue separately * * * for torts committed against them, as fully and freely as if they were unmarried * * *."

30. Bernhardt v. Perry; Brown v. Kistleman; Emerson v. Taylor; Howard v. Verdigris Val. Elec. Co-op.; Kosciolek v. Portland Ry., Light & Power Co.; Landwehr v. Barbas; Maloy v. Foster; McDade v. West; Nash v. Mobile & O. R. Co.; Smith v. Nicholas Bldg. Co.; Tobiassen v. Polley; supra, note 5.

31. Actions for alienation of affections, criminal conversation, and selling habit forming drugs to the spouse as well as liquor in some cases, are included within this group.

32. Brown v. Kistleman; Goldman v. Cohen; Kosciolek v. Portland Ry. Light & Power Co.; supra, note 5.

"* * * [I]t seems to be agreed without dissent that the allowance of exemplary damages does not widen the range of actionable wrongs. In other words, no state of facts exists upon which a claim for exemplary damages could be based, which would not be actionable if the claim for exemplary damages were omitted, or which in general would not be actionable in those jurisdictions where exemplary damages are refused recognition. Consequently, the first inquiry must be, Does the complaint state a cause of action if the allegations relied upon solely to support the claim for exemplary damages be disregarded? If it does not, it is insufficient, and the claim for exemplary damages collapses with the rest of the case."[33]

There can be no doubt, therefore, that if a cause of action in the wife for the loss of *consortium* from alienation of affections or criminal conversation is to be recognized it must be predicated on a legally protected interest. Now then, may we say that she has a legally protected and hence actionable interest in her *consortium* when it is injured from one of these so-called intentional invasions, and yet, when the very same interest is injured by a negligent defendant, deny her a right of action? It does not seem so to us. Such a result would be neither legal nor logical. On the contrary, it has already been held in this jurisdiction that her interest in the marriage relation is co-extensive with that of her husband, and that any interference therewith is a violation of her legal rights.[34] When a legally protected interest of a person has been injured by the wrongful act of another, it is no less actionable because the invasion was negligent rather than intentional or malicious. Some authorities seek to avoid the impact of such logic by holding that in the cases involving intentional invasions to the *consortium* the injury to the wife is direct, because the husband having participated with the defendant, cannot join with her and benefit from his own wrong. The wife therefore has a cause of action.[35] But we are unable to see how the injury to the *consortium* is any less direct when the invasion is by a negligent act. Certainly the directness or remoteness of the injury cannot be affected by the fact that in such cases the measure of the wife's damages may be less because of the husband's recovery of the diminished value of his obligation to support his wife. All that it could possibly do is remove from the arena of compensable injuries those already redressed.

In only a few cases[36] has the theory been advanced that in these intentional invasions the wife has lost her husband's services and so has a suable base for her action. The rule is predicated on the proposition that a wife cannot sue in cases of negligent invasions because in order to sustain an action for loss of *consortium* she must be able to show a loss of material services. The untenability of this position has been sufficiently dealt with, *ubi supra,* where we pointed to those cases where a husband recovers though he shows no loss of services.

The desirability of allowing the wife this action is demonstratable from the anomalous situation in which we would otherwise be placed. For how, under any reasoning, could we, while allowing the husband the action, justify a denial to the wife of a like protection to an interest which is exactly the same as his? And how could we justify denying her the action when we allow her a suit in cases of intentional invasions? The simple answer is that there can be no justification. But we do not necessarily predicate our opinion on the anomalies created by the contrary result. Indeed the proponents of the rule have not escaped criticism.[37] One of the most pointed at-

33. McCormick, Damages, 1935, Sec. 83.

34. Dodge v. Rush, supra, note 27.

35. Bernhardt v. Perry; Boden v. Del-Mar Garage; Brown v. Kistleman; Emerson v. Taylor; Eschenbach v. Benjamine; Gambino v. Mfgrs'. Coal & Coke Co.; Kosciolek v. Portland Ry., Light & Power Co.; Nash v. Mobile & O. R. Co.; Stout v. Kansas City Term. Ry. Co.; supra, note 5.

36. Boden v. Del-Mar Garage; Smith v. Nicholas Bldg. Co.; supra, note 5.

37. See, Bernhardt v. Perry, supra, note 5 (dissenting opinion); See, Landwehr v. Barbas, supra, note 5 (dissenting opinion); McDade v. West, supra, note

tacks was made by William Prosser in his work on torts.[38]

"Obviously," he says, "it can have no other justification than that of history, or the fear of an undue extension of liability of the defendant or a double recovery by wife and husband for the same damages. The loss of 'services' is an outworn fiction, and the wife's interest in the undisturbed relation with her consort is no less worthy of protection than that of the husband. Nor is any valid reason apparent for allowing her recovery for a direct interference by alienation of affections, and denying it for more indirect harm through personal injury to the husband, where no such distinction is made in his action. There remains of course the important fact that the husband is under the duty to support his wife, so that any compensation for loss of earning power paid to him goes indirectly to benefit her, while the wife is under no corresponding duty. This must necessarily be taken into account in any determination of her damages. But such elements of damage as her loss of the husband's society and affection, and in some cases even the expenses to which she has been put in caring for him, remain uncompensated."

As Judge Scudder of the Appellate Division of the Supreme Court of New York said in his dissent in Landwehr v. Barbas,[39] speaking specifically of a case in which one of the sentimental elements of the wife's consortium was injured: "I do not follow the logic of the argument to the effect that a husband may sue for loss of consortium, but a wife may not. In the eyes of our law, marriage is a civil contract; its justification is procreation to preserve the family and the state. Shall it be said that one of the parties to this contract, the wife, may be deprived of its fruit through the tort of a third person without the redress accorded to the husband? When the husband sues to recover compensation for the loss of his

wife's services due to a tort which, among other injuries, has destroyed in her the ability to conceive and bear children, this element is not taken from the consideration of the jury in assessing damages. Children are not less precious nor less valuable to the mother than to the father. In a case such as this, the wrong done is individual both to the husband and to the wife, and a right of action against the wrongdoer should be in each of them. We have recognized the right of the wife to recover compensation for the loss of her husband's attentions, caresses, affection, exclusiveness; then why not for the loss of her right to motherhood within her marriage contract? Surely this loss transcends all the others. For its loss through the tort of another, she is entitled to such compensation as the law can afford." [241 App.Div. 769, 270 N.Y.S. 535.]

And in Georgia as recently as December of 1949 a six judge court was evenly divided on the question.[40] The three in favor of allowing the action said: "We do not think that any of the reasons advanced by the authorities for denying a wife such a right of action are valid. These reasons seem to be: (1) No statute gives the right; (2) The injury is one for which the husband can sue, and (3) The injury is remote and consequential as to the wife. Our answer to (1) is that the common law gives a remedy wherever a right is violated * * * our answer to (2) is that the wrong is not one for which the husband can sue. A husband can sue for his loss of consortium of his wife but not for her loss of his society. Our answer to (3) is that if the injury is not too remote and consequential when the husband sues for loss of consortium it is not so when a wife sues. The wrong is a direct wrong to the valuable interests of the wife, whether intentional or not, the damages for which the husband cannot sue, and in these days of increased enlightenment

5; Lippman, supra, note 13, at page 668; Holbrook, The Change in the Meaning of Consortium, 22 Mich.L.Rev. 1, 8 (1923); Kinnaird, Loss of Consortium, 35 Ky.L.Rev. 220, 223 (1947); 39 Mich. L.Rev. 820, 822 (1940–41); 9 Ind.L. Rev. 182, 185 (1933–34); 5 Cornell L.Q.

171, 173 (1919–1920); Prosser, Torts, 1941, p. 948; Harper, Law of Torts, 1933, p. 566.

38. Prosser, supra, note 37, at p. 948.

39. Supra, note 37.

40. McDade v. West, supra, note 5.

her rights should be recognized and enforced." [80 Ga.App. 481, 56 S.E.2d 302.]

Furthermore, we can conceive of no reasons for denying the wife this right for the reason that in this enlightened day and age they simply do not exist. On the contrary it appears to us that logic, reason and right are in favor of the position we are now taking. The medieval concepts of the marriage relation to which other jurisdictions have reverted in order to reach the results which have been handed to us as evidence of the law have long since ceased to have any meaning. It can hardly be said that a wife has less of an interest in the marriage relation than does the husband or in these modern times that a husband renders services of such a different character to the family and household that they must be measured by a standard of such uncertainty that the law cannot estimate any loss thereof. The husband owes the same degree of love, affection, felicity, etc., to the wife as she to him. He also owes the material service of support, but above and beyond that he renders other services as his mate's helper in her duties, as advisor and counselor, etc. Under such circumstances it would be a judicial fiat for us to say that a wife may not have an action for loss of *consortium* due to negligence.

▌ It is therefore the opinion of this court that in light of the existing law of this jurisdiction, in light of the specious and fallacious reasoning of those cases from other jurisdictions which have decided the question, and in light of the demonstrable desirability of the rule under the circumstances, a wife has a cause of action for loss of *consortium* due to a negligent injury to her husband.

▌ This result poses no problems in ascertaining the wife's damages. Simple mathematics will suffice to set the proper *quantum*. For inasmuch as it is our opinion that the husband in most cases does recover for any impairment of his duty to support his wife, and, since a compensable element of damages must be subject to measure, it is a simple matter to determine the damages to the wife's *consortium* in exactly the same way as those of the husband are measured in a similar action and subtract therefrom the value of any impairment of his duty of support. Of course, in cases where it can be shown that the husband realized no such recovery in his action, as for example under our Workman's Compensation statute where the schedule of compensations makes no effort to distinguish between married and unmarried male claimants entitled to compensation,[41] the wife should also be able to include in her claim for damages the worth of any loss of this recognized element of her *consortium*.

We turn now to the second problem presented by this appeal, namely, whether or not section 905 of the Act cuts off the wife's right to bring this action. That section provides: "The liability of an employer prescribed in section 904 of this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death * * *."

We would be less than candid if we did not admit that the plain and literal language of this section of the Act has such broad implications that it could be conceived to vitiate any right of action *flowing from* the compensable injury; but it is our considered opinion that such a broad interpretation was not and could not have been intended when the result would be such as to lead to the absurd and illogical consequence indicated in this case.

▌ There can be no doubt but that this section is designed to make the employer's liability under this statute exclusive of any other liability either at law or in admiralty to the injured employee or anyone suing in the employee's right. But where a third person is suing in his or her own right on account of the breach some independent duty owed them by the employer, even though the operative facts out of which this independent right and correlative duty

41. 44 Stat. 1427–1431, 33 U.S.C.A. §§ 907, 910.

arose are the same as those out of which the injured employee recovers under the Act, the Act does not proscribe the third person's cause of action. Thus in a case where the employer had secured payment under the Act to the injured employee and the employee thereafter brought an action against the third party, joint tort feasor, that party was allowed to implead the employer in order to get contribution.[42] It was there said:[43] "Nicholson having secured the payment to its employees of compensation under the Longshoremen's and Harbor Workers' Compensation Act * * * is immune from suits for damages resulting from libellant's injuries brought by the libellant *or anyone* in his right, according to the provision of Section 905 of the Act. But the right in admiralty to contribution between wrongdoers does not stand on subrogation but arises directly from the tort * * * The immunity given Nicholson by the statute from suits arising out of libellant's injuries furnishes *no defense against* Hedger's claim to contribution as between joint tortfeasors." [Emphasis added.]

And in the case of Rich v. United States[44] where the injured employee, after receiving benefits under the statute for some months, elected to sue the ship owner, the United States, for whom he and his employer were working when the injury occurred, the court allowed the employer to be brought in by third party practice, despite his contention that his liability on account of the injury was exclusive under the Act, saying: " * * * [T]he third party does not sue the employer for damages 'on account of' the injury to or death of the employee but for breach of an independent duty owing to the third party by the employer." 177 F.2d at page 691.

■ In this jurisdiction the action for loss of *consortium* does not stand on subrogation but arises directly from the tort. Thus in Lansburgh & Bros. v. Clark,[45] where the husband joined in his wife's action for injuries sustained in the defendant's store, a jury verdict denying the wife recovery but giving damages to the husband for loss of *consortium* was upheld, this court saying: " * * * In the prosecution of these *separate and independent* rights there is no privity, and a judgment against one is not a bar to an action by the other." [75 U.S.App.D.C. 339, 127 F.2d 332.] [Emphasis added.]

■ There can be no doubt, therefore, the injury to the *consortium* is an injury to a right which is independent of any right in the other spouse and to which the defendant owes an independent duty. And in view of the fact that this appellant is suing in her own right for the breach of an independent duty owing her, we cannot say that the Act was designed to deprive her of her action.

Moreover it would be contrary to reason to hold that this Act cuts off independent rights of third persons when the whole structure demonstrates that it is designed to compensate injured employees or persons suing in the employee's right on account of employment connected disability or death. It can hardly be said that it was intended to deprive third persons of independent causes of action where the Act does not even purport to compensate them for any loss. A brief examination of it will reveal that there is no provision therein for compensating a spouse for the loss of consortium. As we have already pointed out, no distinction is made as between the amount of compensation payable to married and unmarried injured male claimants, despite the fact that the latter was under a legal duty to support the wife, and any impairment of the ability to perform that duty is a compensable element of damages, belonging to the wife where the husband has failed to recover therefor.

In view of what we have said, therefore, it is our opinion that the District Court erred in dismissing the complaint. The

---

42. The Tampico, D.C.N.Y.1942, 45 F.Supp. 174.

43. 45 F.Supp. at page 175.

44. 2 Cir., 1949, 177 F.2d 688.

45. Supra, note 20.

case is reversed and remanded for further proceedings.

Reversed and remanded.

FAHY, Circuit Judge, concurs in the result.