Leroy James **LEWIS, Jr.,** and Phyllis Lewis, Plaintiffs,

v.

**STORER COMMUNICATIONS, INC.,** Defendant.

Civ. A. No. C85–3514A.

United States District Court, N.D. Georgia, Atlanta Division.

June 27, 1986.

---

Albert E. Jones, Marietta, Ga., for plaintiffs.

Judson Graves, Paul J. Quiner, Alston & Bird, Atlanta, Ga., for defendant.

### ORDER

FORRESTER, District Judge.

This action is before the court on defendant's motion for partial summary judgment. Summary judgment is appropriate only if undisputed facts reveal that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Defendant Storer Communications, Inc., improperly denominated as Storer Broadcasting Company by plaintiffs, seeks summary judgment only on the issue of plaintiff Phyllis Lewis' alleged loss of consortium.

### I. STATEMENT OF FACTS.

Plaintiffs commenced this action for defamation against defendant because of a television broadcast of the arrest of plaintiff Leroy James Lewis, Jr. This broadcast purported to betray plaintiff Lewis as someone arrested in conjunction with "Operation Pay-Up"—an operation for the enforcement of child support obligations carried on by the Fulton County Sheriff's Department. Defendant's Statement of Facts as to Which There is No Genuine Issue, ¶ 1. The broadcast in question took place on February 2, 1985. Plaintiffs contend that on the day of the broadcast Leroy Lewis, was arrested by the Fulton County Sheriff's Department, but on the totally unrelated charge of failure to transfer title to a motor vehicle. Plaintiff Leroy Lewis seeks to recover for the alleged defamation resulting from this broadcast while plaintiff Phyllis Lewis seeks to recover for loss of consortium.

The testimony of Mrs. Lewis regarding her alleged loss of consortium is as follows:

Q: Describe for me how you yourself have been injured by this appearance on TV 5.
A: I was pregnant, and it made me sick. It was nervous. I was embarrassed. My friends see me, and they say, you know, that "Your husband must have another woman somewhere, or more kids somewhere, for them to film that about him." And just embarrassed and nervous and sick and angry....

....

Q: How has it affected your relationship with Leroy?
A: It hasn't. You know, after a while when I found out everything, that he had just been arrested for that, and then I found out that it hadn't had nothing to do with abandonment, and just the doubt went away....

....

Q: Have you been deprived of Leroy's companionship?
A: I think for that whole time he was in jail, yes, and then after that. Like I said, we had only been married a little over a year, but I didn't know what to think after that was—even though I knew he had been arrested for that, there was just some doubt where, you know, people don't usually lie on TV, you always think about, well, you know, it could be something out, you know, but then it went away, but I think for the time he was in jail and then for a little while after that there was, you know, feelings still about the broadcast.

....

Q: Have you been deprived of any of his services by reason of this broadcast on TV?
A: Meaning what?
Q: Well, I don't know. Is there any services that he provided before he appeared on TV that he didn't provide after he appeared on TV?
A: Just that—I didn't feel like being around him after he had got home from jail. I was upset. I was sick. I was mad. He went to sleep. I went to sleep. If you call making love a service, I guess

then that's one thing we did not do that night.

Q: Because he had been in jail?

A: —or a couple—no. Just because I didn't feel like it. I was sick. I had a headache. I was upset. I was still wondering. If you call that a service, I guess so.

Q: How long did that last?

A: A couple of days.

Deposition of Phyllis Lewis, at 43–49. Mr. Lewis has testified regarding his view of the effect of the alleged defamation upon Mrs. Lewis:

Q: Do you treat Phyllis any different now than you did before this occurrence?

A: No.

Q: You don't do any less for her than you did before, do you?

A: No.

Deposition of Leroy James Lewis, Jr., at 68.

II. CONCLUSIONS OF LAW.

There are two prerequisites for recovering for loss of consortium. First, the consortium claimant must establish that the defendant has tortiously injured his or her spouse. *Timms v. Verson Allsteel Press Company*, 520 F.Supp. 1147, 1149 (N.D.Ga. 1981) (citations omitted). Liability or harm to the claimant's spouse must be established because a claim for consortium is strictly derivative from the right of the spouse to recover. *Smith v. Tri-State Culvert Manufacturing Company, Inc.*, 126 Ga.App. 508, 509, 191 S.E.2d 92 (1972). For the purposes of defendant's motion, the court must assume that defendant will be held liable for having defamed Mr. Lewis.

The second prerequisite to recovery for loss of consortium is establishment of damages. The damage inherent in a loss of consortium is damage to the marital relationship caused by the injury to consortium claimant's spouse. In recognizing that a wife has a cause of action for a loss of consortium when her husband is negligently injured, the Georgia Court of Appeals described the interest at stake as follows:

It can hardly be said that a wife has less of an interest in the marriage relation than does the husband or in these modern times that a husband renders services of such a different character to the family and household that they must be measured by a standard of such uncertainty that the law cannot estimate any loss thereof. The husband owes the same degree of love, affection, felicity, etc., to the wife as she to him. He also owes the material service of support, but above and beyond that he renders other services as his mate's helper in her duties, as advisor and counselor, etc. . . . .

*Brown v. Georgia-Tennessee Coaches, Inc.*, 88 Ga.App. 519, 531, 77 S.E.2d 24 (1953). " '[C]onsortium' has now come to mean the rights and duties of both husband and wife, resulting from the marriage, in other words, the marital rights and duties of the spouses *inter se*, the reciprocal rights and duties of society, companionship, love, affection, aid, services, cooperation, sexual relations, and comfort, such being special rights and duties growing out of the marriage covenants." *Smith*, 126 Ga. App. at 510, 191 S.E.2d 92.

The only clear loss which the alleged defamation has clearly caused Mrs. Lewis is the loss of her husband's companionship during the time he was in jail. Of course, defendant has not been charged with responsibility for her husband's arrest. Other than the loss of his companionship for the duration of his confinement, neither Mrs. Lewis nor her husband have pointed to any loss of her husband's society, companionship, love, affection, aid, services, cooperation, sexual relations, or comfort resulting from the alleged defamation. At most, Mrs. Lewis' testimony establishes that she was so emotionally distraught and embarrassed for a few days after the affair that she could not face her friends and could not make love to her husband. While the alleged defamation no doubt caused a great deal of mental anguish, such mental anguish is not the result of an inability on her husband's part to provide "the same

duty of love, affection, felicity, etc., to [her] as she to him." *Brown*, 88 Ga.App. at 531, 77 S.E.2d 24.

Although the court has been unable to locate any Georgia law directly on point, the court notes that other jurisdictions have allowed a claim for consortium in which libel is alleged only upon a showing that the defamed spouse's injury resulted in a loss attributable to the injured spouse's inability to discharge the aforementioned duties. *Garrison v. Son Printing and Publishing Association*, 207 N.Y. 1, 100 N.E. 430 (1912); *Food Fair, Inc. v. Stanley Anderson*, 382 So.2d 150 (Fla.Dist. Ct.App.1980). Indeed, courts have been unwilling to recognize a claim for consortium where embarrassment alone has resulted from the libeling of the consortium claimant's spouse. *See White v. Spence*, 5 Mass.App. 679, 369 N.E.2d 731 (1977). As one commentator has noted with reference to the *White v. Spence* case, "there can be no recovery by the [consortium claimant] in the absence of a basis for inferring that services or affection were actually lost." Prosser and Keeton, *The Law of Torts*, at 933 (5th Ed.1984).

The foregoing conclusions are not meant to denigrate the suffering which plaintiffs' marriage may have endured as the result of the alleged defamation. On the contrary, the court only wishes to insure that damages in the nature of emotional distress be recognized as distinct from damages which may be properly said to flow from the loss of marital privileges occasioned by a spouse's injury. Defendant's motion for partial summary judgment is accordingly GRANTED.