[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This case presents, on defendants' motions for summary judgment an issue unique to Rhode Island: whether the principle of equitable adoption is applicable in this jurisdiction in Wrongful Death Actions.
FACTS
Homere Francois sues defendant physicians alleging medical malpractice which he asserts resulted in the death of his wife Nadine, five days after giving birth to a daughter.
Plaintiff husband brought suit on behalf of himself and his three children: Mary Judith, Abraham, and the youngest child Roselyn.
Homere and Nadine, the decedent, were the natural parents of Abraham and Roselyn. Mary Judith is Homere's daughter by another woman, Anne Gray, who lives in Haiti.
After Homere and Nadine were married, they moved to the United States. They then sought and received consent from Anne Gray to allow Mary Judith (the child of Homere and Anne Gray) to move to the United States to live permanently with Homere and Nadine.
No formal proceedings by Homere and Nadine to adopt Mary Judith were ever instituted and no separate petition in equity has been filed by plaintiffs to have Mary Judith deemed the equitably adopted child of the decedent.
Defendants moved for summary judgment on Mary Judith's claim on the ground that she lacks standing to sue in that she is neither the natural nor adopted daughter of decedent Nadine.
Plaintiff urges this court to recognize the theory of "equitable adoption" thereby allowing Mary Judith to press her claim for the wrongful loss of an equitably adoptive mother's society and companionship under General Laws of R.I. (1988 Reenactment), n. § 10-7-1.2.
Although, as noted, no reported cases in Rhode Island recognizing the doctrine, other jurisdictions have addressed this issue.
THE DOCTRINE OF EQUITABLE ADOPTION
The doctrine that equity, the conscience of the court, will recognize family relationships not formalized by adoption proceedings was originally enunciated in cases involving inheritances.
In those jurisdictions recognizing that doctrine for inheritance purposes, its expansion to tort law has been gradual and consistent. Strict construction jurisdictions, such as South Carolina, early on rejected this theory almost without discussion of an equitable resolution.
As a prelude to recognition of the right of a child to prove that it was equitably adopted, it is important to examine briefly the history of the cause of action for loss of consortium.
At early common law, the action for loss of consortium was brought by the husband for damages stemming from a wrongdoer's interference with the marital relationship. This was founded on the ancient concept of the husband's quasi-proprietary interest in his wife. However a wife, under the common law, had no legal claim to the services or society of her husband.
When the Married Women's Acts of the middle part of the last century recognized that married women indeed had a separate legal identity and the capacity to sue and be sued in their own right, courts almost uniformly thereafter denied a wife the right to recovery for loss of consortium through negligence. Legal commentators were extremely critical of this view, and finally in 1950, the decision in Hitaffer v. Argonne Company, 183 F.2d 811
(D.C. Cir. 1950) precipitated recognition in a large majority of jurisdictions either by statute or by judicial decision the right of either spouse to sue for loss of consortium. Marrianni v.Nanni, 95 R.I. 153, 185 A.2d 119 (1962).
Loss of consortium was conceptualized as a societal and legislative response to the importance of the spousal family unit and the foundational elements that drive that unit.
Later, as society began to enact laws to protect children, it also began to recognize that a child's proper growth and development was strongly connected to the interaction of family members, including the love, companionship, nurturance and guidance inherent in the parent-child relationship. It is the nurturance, love, encouragement, guidance, and protection that a parent provides to a child that is deemed intensely worthy of protection. Driven by new recognition of the ways in which families function and the impact dysfunctional families have upon society, courts began to readily permit recovery to those who in all respects function as children in a mutual relationship within a family unit.
Here it is alleged in the complaint that Mary Judith "by reason of the death of . . . decedent . . . suffered the loss of the parental love, society and companionship of Nadine Francois."
THE FACTUAL INQUIRIES
The uncontested facts asserted here by the plaintiff are these:
1. Mary Judith was born on July 17, 1978 in Haiti.
2. Homere Francois is the natural father of Mary Judith.
3. Anne Gray of Port-au-Prince, Haiti is the natural mother of Mary Judith.
4. On October 21, 1985, Homere married Nadine the decedent in Haiti.
5. In 1986, Nadine obtained permission to join Homere in the United States.
6. Shortly after Nadine came to the United States, she and Homere began arrangements to have Mary Judith obtain permission to live permanently with them in the United States.
7. Anne Gray agreed to this arrangement and gave her written and oral permission to have Mary Judith come and permanently live with Nadine and Homere in the United States.
8. In 1987, Mary Judith came to the United States to live permanently with Nadine and Homere.
9. Mary Judith lived with Homere and Nadine since coming to the United States in 1987 until Nadine's death.
10. During that time, Nadine treated Mary Judith as her daughter and Mary Judith treated Nadine as her mother.
11. Mary Judith exhibited the love, obedience and devotion of a daughter to Nadine.
12. Nadine exhibited the love, devotion and care of a mother to Mary Judith.
13. Nadine referred to Mary Judith as her daughter.
14. Mary Judith referred to Nadine as her mother.
15. Formal adoption procedures were not initiated because Homere was Mary Judith's natural father.
16. Mary Judith continues to live with Homere and his family in Rhode Island.
Among the elements required to establish an equitable adoption are:
1) some showing of an agreement between the adoptive parent and the natural parents; 2) the natural parents giving custody of the child to the adoptive parent; 3) the child giving filial affection, devotion and obedience to the adoptive parent during that parent's lifetime; 4) the adoptive parent taking custody of the child and treating the child as that parent's natural child; and, 5) the death of the adoptive parent without the completion of formal adoption procedures. Cf. In re Lamfrom's Estate,
supra, 368 P.2d at 321; Calista v. Mann, 561 P.2d at 56; Laneyv. Roberts, 409 So.2d at 203; Lee v. Gurley, 389 S.E.2d 333, 334 (Ga. 1990). Central to the determination of whether an equitable adoption will apply under particular circumstances is the existence of an agreement between the adoptive parent and the natural parent. The agreement need not be in writing, need not be express and indeed may be implied from the acts, conduct and admissions of the adopting parties.
Once plaintiff presents facts sufficient to establish the existence of a parent-child relationship between Mary Judith and Nadine by clear and convincing evidence,[1] Mary Judith will become entitled to recovery to the same extent as any of the natural born children of Nadine.
Among other factors that will help to present the issue of equitable adoption to a jury, with appropriate instructions, would include whether the child used the family name of the adoptive parents, whether the adoptive child was known in the community and schools as the child of the adoptive parent; whether the child conducted himself or herself, appropriate to age, as the child of that adoptive parent; the extent to which the child maintained contact with his/her biological parent(s), whether in all respects the child was treated as the natural child of the adoptive parent.
Since the family unit is deemed to be an important institution worthy of protection, to the extent that a minor is a member of the family unit, that minor, though not formally adopted — and often that minor has no choice in the matter — must be brought under the protective shield of benefits accorded to other members of that unit.
To deny at this stage the right of Mary Judith to present this issue of equitable adoption to a jury is to promote the severance of a relationship that society must always preserve and protect.
The motions for summary judgment are denied.
[1] Cf. Clark et al v. Bowler et al., Slip opinion 4-15-93, 91-585.